In re Thomas J. FITZGERALD, Paulette Brophy Fitzgerald, Debtors.

Joseph BRAUNSTEIN, Trustee, Plaintiff,

v.

EASTERN AIRLINES EMPLOYEES FEDERAL CREDIT UNION, Defendant.

Bankruptcy No. 81–1143–JG.
Adv. No. A82–0026.

United States Bankruptcy Court, D. Massachusetts.

May 15, 1985.

Charles Bennett, Jr., Riemer & Braunstein, Boston, Mass., for trustee, plaintiff.

Jonathan Levin, Davis, Malm & D'Agostine, Boston, Mass., for defendant.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The complaint of the Plaintiff, Joseph Braunstein, chapter 7 trustee of the debtor's estate ("the trustee") seeks to avoid an assignment of a note and mortgage granted by the debtor, Thomas J. Fitzgerald ("the debtor" or "Fitzgerald") to Eastern Airlines Employees Federal Credit Union ("the credit union") on April 13, 1981 as a voidable preference under 11 U.S.C. § 547. The defendant filed an Answer and a trial was held. Based upon the testimony and documentary evidence I make the following findings of fact and conclusions of law.

The debtor filed his voluntary chapter 7 petition on June 26, 1981. Prior to filing, the debtor had a credit relationship with the credit union. He borrowed $15,000 on May 4, 1979 for the purchase of an automobile, executed a note, and granted the credit union a security interest in the vehicle, a

1979 Mercedes Benz. The security agreement, a preprinted form prepared by the credit union attached to and incorporated into the note, contained the following language:

"The above described collateral is given the credit union to secure:

(a) the payment of all indebtedness evidenced by and according to the terms of that promissory note(s) of even date herewith executed and delivered by the borrower to the credit union . . .

(c) future advances made by the credit union to the borrower; and

(d) all other liabilities of the borrower (primary, secondary, direct, contingent, sale, joint, or several) due or to become due or which may be hereafter entered into between or acquired by the bank.

Fitzgerald also owed four other obligations to the credit union: an Easy Access loan, FHA loan, a co-maker loan and Mastercard. On their face, these debts were unsecured (apart from the effect of the "dragnet" clause). As of April 12, 1981 Fitzgerald owed $11,774.33 on the car loan and $9692.26 on the other loans.

In April 1981 the credit union and Fitzgerald entered into a refinancing agreement to sell the car and rollover the other debts which were in default. On April 13, 1981, the debtor executed a three year note in the principal amount of $9692.26, with interest payable at the rate of eighteen per cent (18%) per year. The note consolidated the debtor's existing indebtedness to the credit union other than the car loan. As security for this note, Fitzgerald assigned to the credit union a $14,500 note due him from Douglas Terman, ("Terman") and a mortgage from Terman on real estate located in Warren, Vermont. No new funds were advanced to Fitzgerald on April 13, 1981. The Mercedes was sold on April 22, 1981 for $11,600 which was paid to the credit union and its lien was discharged.

At trial the trustee relied on the statutory presumption of insolvency. The defendant introduced no evidence to rebut the presumption. It appears that creditors of the debtor will not receive one hundred per cent (100%) on their claims, and that a dividend of less than fifty per cent (50%) is likely.

The trustee contends that the debtor's assignment of the note and mortgage to the credit union in connection with the refinancing is a voidable preference as it was a transfer on account of an antecedent debt within 90 days of bankruptcy while the debtor was insolvent which enabled the credit union to receive more than in a chapter 7 distribution. The credit union contends that the "future advances" or "dragnet" clause in the 1979 security agreement made it a secured creditor with respect to the April 13, 1981 note, and that the transfer did not enable it to receive more than in a chapter 7. The credit union also asserts that the transfer on April 13, 1981 is excepted from avoidance as a preference pursuant to 11 U.S.C. § 547(c)(1) on the ground that Eastern's extension of credit on that date in exchange for the assignment was a contemporaneous exchange for new value to the debtor.

The Trustee may avoid any transfer of property of the Debtor that is:

(1) To or for the benefit of the creditor;

(2) For or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) Made while the debtor was insolvent;

(4) Made on or within ninety days before the date of the filing of the petition; and

(5) One which enables the creditor to receive more than such creditor would have received if the case were a case under chapter 7 of this title, the transfer had not been made and such creditor had received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (1979). The trustee may not avoid a transfer "to the extent that such transfer was intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and in fact a substantially con-

temporaneous exchange;" 11 U.S.C. § 547(c)(1)(A) and (B) (1979). The trustee has introduced evidence by way of testimony and the defendant's responses to requests for admissions to establish each and every one of the aforesaid elements entitling him to avoid the transfer as preferential.

Eastern has admitted that prior to April 13, 1981, Fitzgerald was indebted to it in the amount of $9,692.26 [Paragraph 6 of Eastern's Answer]; that the promissory note represented a consolidation of the existing indebtedness of Fitzgerald to Eastern [Paragraph 8 of the Defendant's Response to the Plaintiff's Request for Admissions]; and that on April 13, 1981, Fitzgerald assigned a note and mortgage to Eastern as security for his obligations to Eastern under the April 13, 1981 note [Paragraph 10 of Eastern's Response to the Plaintiff's Request for Admissions].

Eastern raises two defenses to the preference action. Eastern asserts that the pre-existing otherwise unsecured obligations of Fitzgerald to Eastern were secured debts by reason of a "dragnet" clause contained in a 1979 security agreement between Eastern and Fitzgerald relating to the loan by Eastern to Fitzgerald for the vehicle purchase.

■ Generally, a trustee cannot recover a prepetition transfer or payment within ninety days to a fully secured creditor because the transfer only reduces secured debt and does not enable the secured party to receive more than would be forthcoming in a chapter 7 case. *In re Derritt,* 20 B.R. 476 (Bankr.D.Ga.1982; *In re Hale,* 15 B.R. 565 (Bankr.S.C.Ohio 1981). However, when the value of the secured party's collateral is less than the amount of debt, a transfer to the undersecured party does deplete the estate and such a transfer is preferential. *Small v. Williams,* 313 F.2d 39, 44 (4th Cir.1963); *Sloan v. Garrett,* 277 F.Supp. 235 (D.S.C.1967); *In re Zuni,* 6 B.R. 449 (Bankr.D.N.M.1980); *In re*

*McCormick,* 5 B.R. 726, 729–30 (Bankr.N. D.Ohio 1980). Thus, even if a dragnet clause is enforced so as to render claim secured[1] where the amount of debt exceeds the value of the collateral, the transfer to the undersecured creditor within ninety days of bankruptcy has the effect of depleting the estate and the dragnet clause does not except him from liability for the preference. *See In re Frigitemp Corp.,* 34 B.R. 1000, 1014 (D.S.D.N.Y.1983).

■ In the present case, the credit union was undersecured with respect to the car loan at the time of the transfer on April 13, 1981. The amount of the debt, approximately $11,800, exceeded the sales price of the car shortly thereafter—$11,600. Thus, despite the dragnet clause's attempt to make secure all liabilities, the other obligations of Fitzgerald totalling $9692 were unsecured debts at the time of the transfer of the Terman note and mortgage. Accordingly, the transfer enabled the credit union to receive more than it would have in a distribution in a chapter 7.

■ Eastern's second defense is that the assignment of the note and mortgage as a transfer is excepted from avoidance under 11 U.S.C. § 547(c)(3) because it was a contemporaneous exchange for new value given the debtor when the credit union renegotiated and extended the terms of his unsecured indebtedness. "New value" is defined as:

> "... money or money's worth in goods, services or new credit, released by a transferee of property previously transferred that is neither void nor voidable by the debtor or the trustee under applicable law, but does not include a obligation substituted for an existing obligation."

11 U.S.C. ¶ 547(a)(2) (1979). Where a creditor takes security from an insolvent debtor within the ninety day period, he does not receive a preference if the consideration

---

1. This assumes the dragnet clause is valid and enforceable. Many courts do not enforce such provisions, because they are unconscionable.

*See, e.g., In re Bonner,* 43 B.R. 261 (Bankr.N.D. Ala.1984).

was a loan or advance of money to the debtor made at the same time the security transfer was perfected; in this instance the transfer is a contemporaneous exchange for new value and not on account of antecedent debt. *L. King, 4 Collier On Bankruptcy,* ¶ 547.20, 547–73 (15th ed. Supp. 1983). However, if the security was actually given for a pre-existing debt the transfer is considered a voidable preference. *Id.* at 574–75. *Accord, v. Countryman,* "Bankruptcy Preferences, Current Law & Proposed Changes", 11 U.C.C.L.J. 95 (1978). In determining whether a transfer was a contemporaneous exchange for new value, "[t]he key inquiry . . . is whether the parties at the outset intended the exchange to be contemporaneous." *L. King, 4 Collier On Bankruptcy,* ¶ 547.38, at 547–119 (15th ed. Supp.1983).

 In the present case, the security interest was not assigned to the credit union at a time when the creditor promised to or delivered funds to the debtor. Moreover, contrary to the credit union's argument, this is not a case where a third party advanced funds to an insolvent debtor in exchange for a mortgage. The debtor's unsecured obligations existing prior to April 13, 1981 simply were consolidated and rolled over into one note in the same principal amount as all pre-existing debt. These facts demonstrate that the assignment of the Terman note and mortgage granted to secure the new note was in actuality given to secure the debtor's antecedent unsecured obligations, transforming a general antecedent unsecured liability of an insolvent debtor to a secured debt within ninety days of bankruptcy. The credit union did not give new value in exchange for the assignment.

The trustee has established all the essential elements of a preferential transfer and the creditor's defenses are unmeritorious. The assignment on April 13, 1981 of the Terman note and mortgage is avoided and judgment shall enter for the plaintiff in this adversary proceeding.