In re Beverly L. ADAMS, Debtor.

Beverly L. ADAMS, Plaintiff,

v.

HARTCONN ASSOCIATES, INC., Putnam Water Pollution Control Authority, The Town of Putnam, and William J. Monty, Defendants.

Bankruptcy No. 94–42263–HJB.
Adversary No. 96–4192.

United States Bankruptcy Court,
D. Massachusetts.

Sept. 10, 1997.

Francis B. Fennessey, Charlton, MA, for Debtor.

Edward P. Jurkiewicz, Hartford, CT, for William J. Monty.

Kathryn A. Fagan, Springfield, MA, for Hartconn Associates, Inc.

Colleen Creevy Cording, Worcester, MA, for Town of Putnam and Putnam Water Pollution Control Authority.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court for determination is a motion for summary judgment by plaintiff and debtor Beverly L. Adams (the "Debtor"), seeking judgment against William J. Monty ("Monty"), and Hartconn Associates, Incorporated ("Hartconn"),[1] on two counts of her

---

**1.** On March 27, 1997, the Court allowed the Debtor's "Motion For Order Approving Settlement and Dismissal of Claims Against the Putnam Water Pollution Control Authority [ (the "WPCA") ] and the Town of Putnam." This action mooted (i) motions for summary judgment filed by the WPCA and the Town of Putnam, (ii) the Debtor's motion for summary judgment as it pertained to those two parties, and (iii) the WPCA's and the Town of Putnam's "Motion to Strike and Notice of Objection." Accordingly, the Court will treat the second amended complaint as raising counts only against Monty and Hartconn (the "Defendants"); and the recitation of facts below is limited to facts relevant to those two parties and the Debtor. Further, Monty's August 1, 1996 "Answer to the Debtor's Second Amended Complaint" included a cross-claim against the WPCA and the Town of Putnam. However, the parties later settled that portion of the dispute, with leave of court.

second amended complaint (the "Complaint"). Also before the Court are motions by Monty and Hartconn, seeking summary judgment in their favor with regard to all counts raised against them by the Debtor.

In summary, the Debtor contends that Monty collected and retained certain rents relating to real property of the Debtor, and failed to file an accounting thereof with David J. Noonan, the Chapter 7 trustee (the "Trustee"). The Debtor argues that Monty's actions constituted (1) violations of the automatic stay, pursuant to 11 U.S.C. § 362(a); (2) violations of the discharge injunction, pursuant to 11 U.S.C. § 524(a); (3) violations of 11 U.S.C. § 543(b); and (4) preferences and postpetition transfers which can be avoided and recovered by the Debtor pursuant to 11 U.S.C. §§ 547, 549, and 522(h). The Debtor also alleges that both Monty and Hartconn violated chapter 93A of the General Laws of Massachusetts and/or Section 42–110b of the Connecticut General Statutes by using the Debtor's tax identification number on 1099 reports sent to the Internal Revenue Service (the "IRS").

### I. *Facts*

The facts are without material dispute.[2]

On April 15, 1994, the WPCA filed an action against the Debtor in the Connecticut Superior Court for the Judicial District of Windham at Putnam, Connecticut (the "Connecticut court") (the "State Court action"),

pursuant to Conn. Gen.Stat. § 16–262f(a) (1997) (the "Connecticut Statute"),[3] seeking (i) judgment for unpaid water and sewer charges relating to a multifamily property located at 75–77 Van den Noort Street in Putnam, Connecticut (the "Putnam Property") owned by the Debtor, and (ii) the appointment of a receiver of the rents thereof until the WPCA was paid in full. On April 19, 1994, the Connecticut Court awarded the WPCA a judgment totaling $8,708.39 for unpaid water and sewer charges, and appointed Monty as receiver of the rents of the Putnam Property. Shortly thereafter, Monty informed the tenants of the Putnam Property that he had been appointed receiver, and that he would visit the property on a monthly basis to obtain their rental payments. He began collecting rents on May 6, 1994.

On May 16, 1994, the Debtor filed a petition in this Court under Chapter 7 of the Bankruptcy Code. In her schedules, the Debtor indicated that the Putnam Property was worth $70,000, but subject to liens totaling $72,365. She elected the federal exemption scheme set forth in 11 U.S.C. § 522(d). However, the Debtor did not claim any exemption relating to her interest in the Putnam Property or the rents therefrom.

At all relevant times herein, Hartconn was providing federal "Section 8" rental assistance payments for one tenant of the Putnam Property. On May 16, 1994, Monty forward-

---

**2.** The majority of facts relating to Monty's activities as receiver of the Putnam Property are taken from his contemporaneous time records, appended to the Plaintiff's "Brief in Support of Motion for Summary Judgment."

**3.** That statute provides, in relevant part:

Upon default of the owner ... of a residential dwelling who is billed directly by an electric, gas, telephone or water company or by a municipal utility service furnished to such building, such company or municipal utility may petition the superior court or a judge thereof, for appointment of a receiver of the rents or payments for use and occupancy for any dwelling for which the owner, agent, lessor or manager is in default. The court or judge shall forthwith issue an order to show cause why a receiver should not be appointed, which shall be served upon the owner ... in a manner most reasonably calculated to give notice to such owner.... A hearing shall be had on such order no later than seventy-two hours after its issuance or the first court day

thereafter. The sole purpose of such a hearing shall be to determine whether there is an amount due and owing between the owner ... and the company or municipal utility. The court shall make a determination of any amount due and owing and any amount so determined shall constitute a lien upon the real property of such owner. A certificate of such amount may be recorded in the land records of the town in which such property is located describing the amount of the lien and the name of the party in default.... The receiver appointed by the court shall collect all rents or payments for use and occupancy forthcoming from the occupants of the building in question in place of the owner.... The receiver shall pay the petitioner or other supplier, from such rents or payments for use and occupancy, for electric, gas, telephone, water or heating oil supplied on and after the date of his appointment.
Conn. Gen.Stat. § 16–262f(a).

ed a letter to Hartconn, by mail and telecopier, instructing Hartconn to send future payments to his office. Monty followed up with a telephone call to Hartconn the next day. Monty was not aware of the existence of the bankruptcy case until May 18, 1994, at which time he received a letter from counsel for the Debtor informing him of the bankruptcy filing. Thereafter, Monty stopped visiting the Putnam Property to collect the rents. However, Hartconn and some tenants continued to mail their rental payments to Monty.

Between the date of the filing of the petition and July 12, 1994, Monty performed the following activities as receiver: (1) depositing rental payments received from the tenants;[4] (2) calling the WPCA's counsel regarding the status of the bankruptcy case; (3) receiving calls from tenants and prospective tenants about various matters with respect to the Putnam Property; (4) calling a tenant "about payment of rent" on June 8, 1994; (5) calling a state welfare agency official about a dispute between the Debtor and a former tenant; and (6) calling Hartconn on July 12, 1994, apparently to inquire about when he would be receiving the rental assistance payment for that month.[5] On July 12, 1994, the Trustee filed a "Notice of Intent ... To Abandon [the Putnam Property]" (the "Trustee's Notice").[6] In the Trustee's Notice, he listed the property as having a market value of $70,000, subject to a mortgage totaling $62,451.22 and liens to the WPCA and the Town of Putnam totaling $9,915.98. The WPCA's counsel faxed a copy of the Trustee's Notice to Monty on the day before it was filed with the Court, accompanied by a letter in which the WPCA's counsel stated: "Please resume your duties as receiver." Monty promptly resumed the collection of rents and his other duties as receiver. On October 27, 1994, the Debtor received her

Chapter 7 discharge, and on December 14, 1994 the case was closed.

On February 6, 1995, Monty submitted an "interim accounting" of the rents to the Connecticut Court, which subsequently approved it. Pursuant to that accounting, the sum of $3,443.71 was paid to the WPCA.

On April 17, 1995, Monty obtained the approval of the Connecticut Court to disburse an additional $774.76 to the WPCA. Because the title to the Putnam Property was about to be transferred to a third party pursuant to a foreclosure auction, the Connecticut Court also discharged Monty of his duties as receiver. The foreclosure sale was consummated, and title to the Putnam Property was transferred to the buyer on April 19, 1995.

In early October 1995, Monty received from Hartconn a document entitled "First B Notice." The document stated: "The [IRS] has notified [Hartconn] that the taxpayer identification number on your account with us does not match their records." The account number used was the Debtor's social security number, but the name on the account was listed as "Monty, Attorney William/Receiver for Beverly Adams." Monty responded by suggesting that Hartconn "reissue [the IRS form] in the name of Beverly L. Adams in c/o William Monty, Receiver at [Monty's] address." Monty enclosed an IRS Form W–9 previously sent to him by Hartconn. The form was completed in accordance with his suggestion.

On March 13, 1996, almost 17 months after the order discharging her debts entered and almost 15 months after her case was closed, the Debtor filed a motion to reopen the case. She indicated that she intended to file an adversary proceeding to pursue an alleged violation of the automatic stay. The motion was not opposed and was allowed by the

---

**4.** According to copies of Monty's redacted bank statements from his Connecticut Bar Foundation Clients Fund Account, he made deposits relating to the Putnam Property on May 24 and 26, June 1, 3, and 30, and July 20 of 1994, totaling $1557.00.

**5.** Monty's log of activities regarding the receivership contains the following notes with respect to the June 12, 1994, call to Hartconn:

call to Hartconn....
—no problems—check to be sent shortly—
waiting for funding from the state
Debtor's Mot. for Summ. J. Against Monty, Ex. 3.

**6.** Although not technically necessary, the Court allowed the abandonment on August 2, 1994.

Court on March 29, 1996. On April 22, 1996, the Debtor filed her complaint. She later amended the complaint with leave of Court on two occasions. In her second amended complaint, the version now before the Court, the Debtor brought counts against Monty implicating the following Bankruptcy Code provisions: (1) § 362, for violation of the automatic stay; (2) § 524(a)(2), for violation of the discharge injunction; (3) § 543(b), for failing to turn the rents over to the Trustee and not filing an accounting of the property of the Debtor in his custody; and (4) §§ 522(h), 547, and 549, arguing that the rents collected by Monty between the time of the bankruptcy filing and the abandonment of the Putnam Property constituted a preference and unauthorized postpetition transfers. The Debtor has also raised a count under chapter 93A of the General Laws of Massachusetts and/or Section 42–110b of the Connecticut General Statutes against Monty and Hartconn for using the Debtor's tax identification number on 1099 reports sent to the IRS.

On September 6, 1996, the Debtor filed a "Motion for Summary Judgment against William J. Monty for Violation [of] the Automatic Stay and Discharge Injunction." On September 20, 1996, both Monty and Hartconn filed "Motion[s] for Summary Judgment," contending that they were entitled to summary judgment on all counts brought against them. After hearing and extended briefing schedules, the Court took the cross motions for summary judgment under advisement.

## II. *Analysis*

### A. Section 362(h)

The filing of a petition in bankruptcy "operates as a stay, applicable to all entities, of ... the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case," and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(2), (3). The filing also operates as a stay against "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose

before the commencement of the case," and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case...." 11 U.S.C. § 362(a)(5, 6).

■ An individual injured by any willful violation of the automatic stay is entitled to recover "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, ... punitive damages." 11 U.S.C. § 362(h). Thus, by the terms of the statute, there are three elements that must be established before damages will be awarded for violation of the automatic stay: (1) the violation must have occurred, (2) the violation must have been committed willfully, and (3) the violation must have injured the individual seeking damages. If all three elements are met, the court must award actual damages and then decide whether punitive damages are appropriate.

In order to establish that a violation of the automatic stay is "willful," it is first necessary to define the term. In the case of *Putnam v. Rymes Heating Oils, Inc. (In re Putnam)*, 167 B.R. 737 (Bankr.D.N.H.1994), Judge Vaughn of the U.S. Bankruptcy Court for the District of New Hampshire explicated the two different definitions which courts have given to the word "willful" in the context of § 362(h). *Id.* at 739. Under the narrower definition of "willfulness" the violator must intend to violate the stay. Under the broader definition, adopted by the Second, Third, Fourth, and Ninth Circuits, sufficient "willfulness" is found if "(1) [the creditor] has knowledge of the petition, and (2) the act which violates the stay was intentional." *Id.* at 740 (citing cases). Judge Vaughn found favor with the broader definition. *Id.*

■ This Court agrees with the *Putnam* analysis. Proving that the creditor "intended" to violate the stay would be nearly impossible in most cases. Further, the definition of willfulness adopted by *Putnam* is more consistent with the definition of the same word given by the First Circuit in the context of 11 U.S.C. § 523(a)(6). In *Printy v. Dean Witter Reynolds, Inc. (In re Printy)*, 110 F.3d 853 (1st Cir.1997), the court was faced with an analogous split as to the mean-

ing of willfulness in the context of § 523(a)(6).[7] Instead of adopting a definition of willfulness that would require a debtor to intend harm towards a victim, the court opted for a definition that required, inter alia, only that the debtor intend to commit the act itself in the face of a contrary recognizable duty. Specific intention to injure the victim was not deemed necessary. *Id.* at 858–59. Appropriate statutory construction requires that the same word set forth in different parts of an act be defined in the same way, unless the context demands otherwise or there is an indication that Congress intended otherwise. *See Fortin v. Marshall,* 608 F.2d 525, 528 (1st Cir.1979) ("There is a presumption that the same words used in different parts of an act have the same meaning."); *see also United States v. Ramirez–Ferrer,* 82 F.3d 1131, 1137 (1st Cir.1996). Therefore, the Debtor does not have to prove that Monty intended to violate the automatic stay. She must only demonstrate that Monty intended to commit the act or acts which were a violation of the automatic stay, while aware of the pendency of the bankruptcy case. *See generally Soares v. Brockton Credit Union (In re Soares),* 107 F.3d 969 (1st Cir.1997).

Proper analysis of the interplay between the facts of this case and § 362 requires that the underlying events be divided into two separate periods, (1) the period between the commencement of the case and the Trustee's abandonment of the Putnam Property; and (2) the period between the Trustee's aban-

donment and the granting of the Debtor's discharge.

### 1. The Postpetition Pre–Abandonment Period

Monty does not dispute that he violated the automatic stay during the postpetition period prior to the abandonment of the Putnam Property. *See* Mem. of Monty, WPCA, and Town of Putnam in Supp. of Mots. for Summ. J. at 10. In depositing the rental payments that were mailed to him and by calling a tenant and Hartconn regarding their monthly rental payments, Monty was attempting "to obtain possession of property of the estate" and "to exercise control over property of the estate." *See* § 362(a)(3). However, this violation of the stay did not result in an actual injury to the Debtor during the pre-abandonment period. The Debtor had no equity in the Putnam Property and the Debtor did not elect an exemption which covered the subject rents.[8] Therefore, she was not entitled to the rents, if at all, until the Trustee abandoned the property.

### 2. The Post–Abandonment Pre–Discharge Period

In considering the applicability of the automatic stay after the Trustee abandoned the property, it is necessary to determine when the stay terminated and with respect to what acts. Section 362(c) describes when the automatic stay terminates, and distinguishes the stay of acts against property of the estate from the stay of other acts.[9]

**7.** That statute provides that "[a] discharge under section 727 ... does not discharge an individual debtor from any debt ... for *willful* and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (emphasis added).

**8.** As noted above, the Debtor elected the federal exemption scheme under 11 U.S.C. § 522(d) in Schedule C of her bankruptcy petition, and she did not claim an exemption with respect to the Putnam Property or the rents therefrom. Nor did she amend her Schedule C at any time prior to the closing of the case in order to claim such an exemption. While the Debtor has argued her "entitlement" to an exemption totaling $782, the amount she would have been allowed to exempt under the version of § 522(d)(5) in effect when she filed her petition (prior to the amendments imposed by the Bankruptcy Reform Act of 1994), she has not moved to amend her schedules.

Even if she did so, *and* the Court allowed her to at this late stage of the game, her recovery of that money would be barred by the equitable doctrine of laches. The applicability of that doctrine to this case is discussed in detail below.

**9.** Section 362(c) provides:
(c) Except as provided in subsections (d), (e), and (f) of this section-
(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and
(2) the stay of any other act under subsection (a) of this section continues until the earliest of-
(A) the time the case is closed;
(B) the time the case is dismissed; or
(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

■ Sections 362(a)(2) and (3) stay acts against property of the estate. Once abandoned, the Putnam Property was no longer property of the estate and those sections no longer applied. *See* § 362(c)(1). However, §§ 362(a)(5) and (6) stay acts against property of the debtor and remained applicable to any act to enforce a lien against "property of the *debtor*" until the case was dismissed or closed, or discharge was granted or denied. *See Gassaway v. Federal Land Bank of New Orleans (In re Gassaway),* 28 B.R. 842, 846 (Bankr.N.D.Miss.1983) ("the abandonment of the real estate by the trustee removes such realty from the bankruptcy estate, but upon removal from the bankruptcy estate it continues as property of the debtor plaintiff, and the stay continues in effect until the occurrence of events mentioned in § 362(c)(2)"). The earliest of the § 362(c)(2) events to occur was when the Debtor was granted a discharge on October 27, 1994, long after Monty resumed his receivership duties.

Monty argues that the Putnam Property was not "property of the debtor" after the Trustee's abandonment. He contends that the property came back under his control once abandoned by the Trustee. He relies on 11 U.S.C. § 554(a), which provides in relevant part that "the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." The statute does not specify to whom property should be abandoned. However, legislative history reveals that Congress intended that "[a]bandonment [might] be to any party with a possessory interest in the property abandoned." S.Rep. No. 95–989, at 92 (1978); H.R.Rep. No. 95–595, at 377 (1977).[10] Monty

argues that since he had a superior possessory interest in the Putnam Property at the time of case commencement, the Putnam Property should be deemed abandoned to him and, therefore would not constitute "property of the debtor."

■ The Debtor responds that, regardless of who had the strongest possessory interest, she retained legal title to the Putnam Property. She argues that legal title to the rents was alone sufficient render them "property of the debtor." The Debtor is correct. The term "property of the debtor" is not defined in the Bankruptcy Code. However, its definition may be extrapolated by analogy from § 541. That section establishes what constitutes "property of the estate." It includes, subject to inapplicable exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). *See In re Pluta,* 200 B.R. 740, 742 (Bankr.D.Mass.1996) (car which creditor had repossessed prepetition and in which debtor had no equity was nonetheless property of the estate). Since property can enjoy the status of "property of the estate" notwithstanding a debtor's bare legal title, it follows that, after abandonment, property enjoys the status of "property of the debtor" notwithstanding a debtor's bare legal title. There is no discernible reason why a debtor must have a possessory interest in property abandoned by the trustee for that property to constitute "property of the debtor" under § 362(a)(5).

■ Accordingly, even if property is abandoned by a trustee to a creditor as the party with the strongest possessory interest in the property, that creditor still must ob-

---

**10.** After noting this legislative history, one court has stated:

> Generally, a "possessory interest" is defined as a "right to exert control over" or a "right to possess" property "to the exclusion of others." *Black's Law Dictionary* 1049 (5th ed.1979). This legislative reference and attendant definition are in keeping with cases under former law which hold that title and right to the property reverts to its pre-bankruptcy status. Thus, whoever had the possessory right to the property at the filing of bankruptcy again reacquires that right.
>
> ....

> ... [W]hen the trustee abandons property, the property stands as if no bankruptcy had been filed and the debtor enjoys the same claim to it and interest in it as he held previous to the filing of bankruptcy.

*In re Cruseturner,* 8 B.R. 581, 591 (Bankr.D.Utah 1981); *see also Ohio v. Kovacs,* 469 U.S. 274, 284 n. 12, 105 S.Ct. 705, 711, 83 L.Ed.2d 649 (1985) ("abandonment is to the person having the possessory interest in the property"); *Dewsnup v. Timm (In re Dewsnup),* 908 F.2d 588, 590 (10th Cir.1990), *aff'd,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *In re Popp,* 166 B.R. 697, 700 (Bankr.D.Neb.1993); *In re A.J. Lane & Co., Inc.,* 133 B.R. 264, 268–69 (Bankr.D.Mass.1991).

tain relief from the automatic stay prior to enforcing a lien on the property. Because in this case, when the property was abandoned, § 362(a)(5) applied and § 363(c)(2) was not yet applicable, Monty's resumption of his receivership duties with respect to the Putnam Property violated the automatic stay during the period between the date of the Trustee's abandonment and the date of the order of discharge under § 524.

Nevertheless, this Court is unable to find a source of actual damages suffered by the Debtor. It is true that the subject rents were property of the Debtor. But those rents emerged from Chapter 7 subject to the ongoing WPCA lien. *See Dewsnup v. Timm*, 502 U.S. at 418–19, 112 S.Ct. at 778; *Farrey v. Sanderfoot*, 500 U.S. 291, 297, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991) ("Ordinarily, liens and other secured interests survive bankruptcy."); *Chandler Bank of Lyons v. Ray (In re Ray)*, 804 F.2d 577, 579 (10th Cir.1986) ("[U]navoided liens pass through [11 U.S.C.] § 506(d) without action by the lien holder."); *In re Maylin*, 155 B.R. 605, 611 (Bankr.D.Me.1993) ("[U]nless the secured creditor is hailed into bankruptcy court to respond to an effort to alter, amend or avoid its position, it may ignore the bankruptcy proceedings. The lien passes through bankruptcy.").[11]

The Debtor argues that the WPCA lien does not extend to the rents because the Connecticut Statute refers to a lien on the *real property* only, not on the rents therefrom. The Court reads the Connecticut Statute differently. It would make little sense to interpret the Connecticut Statute as granting the claim holder a lien on the real estate and then authorizing a receiver to collect *unencumbered* rental proceeds of that same real estate. The receivership is merely a lien enforcement mechanism, and is not meant to constitute something separate and apart from the lien. Upon the Trustee's abandonment of the property, the rents from the Putnam Property were revested in the Debtor, but subject to the lien of the WPCA and its enforcement mechanism, the receivership. Accordingly, the Debtor was not entitled to the rents once the Putnam Property was abandoned, and did not suffer an injury from Monty's post-abandonment collection of the rents in violation of the automatic stay.

Even had the Court found that the Debtor was entitled to the rents upon the Trustee's abandonment of the Putnam Property, the equitable doctrine of laches would bar any recovery to the Debtor under § 362(h). Monty notes that the Debtor made no attempts to collect rents from the Putnam Property; did not contact Monty to inform him that he had no right to the rents or to make demand for the rents; and "asserted no proprietary interest in the aforesaid real property." Monty's Answer to Second Am. Compl. at 7–8. In short, Monty argues that the Debtor "slumbered on her rights and omitted to take actions to notify the Defendant William J. Monty of her grievance in such manner as to prejudice said defendant." *Id.* at 8. The Debtor provides no evidence to the contrary.

 This Court agrees that the Debtor's inaction is critical. While the automatic stay is normally stringently enforced, "[a] bankruptcy court, as a court of equity, nevertheless must be guided by equitable principles in exercising its jurisdiction." *Matthews v. Rosene (In re Matthews)*, 739 F.2d 249, 251 (7th Cir.1984); *see also Soares*, 107 F.3d at 976 (actions taken in violation of the automatic stay are void, but "equitable considerations may alter some outcomes"). "Under the doctrine of laches, a right is lost if one unreasonably delays in the assertion of that right to the prejudice of the other party." *In re Halmar Distributors, Inc.*, 116 B.R. 328, 335 (Bankr.D.Mass.1990), *rev'd on other*

---

11. The parties dispute whether the lien created by Conn. Gen.Stat. § 16–262f was statutory or judicial. *See infra* part II.C. If it was a judicial lien, then it was possibly "avoidable" pursuant to 11 U.S.C. § 522(f)(1)(A). Nevertheless, no avoidance action was brought. As stated in *In re Burks:*

> Whether the Trustee could have used his power under § 544 or § 545 is irrelevant. The fact

is that he did not. The Trustee's avoidance powers are not automatic, but rather require affirmative actions taken by the Trustee.... [L]iens which were not avoided by the Bankruptcy Trustee survive the Bankruptcy unaffected.

181 B.R. 303, 307 (Bankr.N.D.Ohio 1995).

*grounds,* 968 F.2d 121 (1st Cir.1992); *see also In re Smith Corset Shops, Inc.,* 696 F.2d 971, 976–77 (1st Cir.1982) (court applied equitable principles in excusing creditors' violation of the automatic stay); *Boston Valuation Group, Inc. v. Hall (In re Tremont Place Realty Trust),* 159 B.R. 624, 624 (Bankr.D.Mass.1993). "Suspension of Section 362 automatic stay provisions may be consonant with the purposes of the Bankruptcy [Code] when equitable considerations weigh heavily in favor of the creditor and the debtor bears some responsibility for creating the problems." *Matthews,* 739 F.2d at 251.

■ Here, the Debtor waited until nineteen months had passed after Monty resumed his receivership duties before moving to reopen the case in order to initiate this adversary proceeding. Monty was prejudiced by the Debtor's silence because he continued to collect the rents, and thus the actual damages for which he was potentially liable to the Debtor under § 362(h) continued to grow. As the First Circuit stated in *Smith Corset Shops,* in applying equitable principles to defeat a debtor's contention that creditors had violated the automatic stay:

> We ... hold that [the debtor] could not remain stealthily silent when it knew that the [stay was being violated] and then turn around and successfully sue the [creditors] for the alleged conversion.... We do not think Congress envisioned any such misuse of the automatic stay.

696 F.2d at 977; *see also Wolkowitz v. Shearson Lehman Brothers, Inc. (In re Weisberg),* 193 B.R. 916, 925 (9th Cir. BAP 1996) (where "the debtor contributed to its alleged damage by remaining quiescent despite the numerous margin calls by" the creditor, laches barred recovery under § 362(h)).

Premised on her alleged ignorance of Monty's resumption of receivership duties after the Trustee abandoned the Putnam Property, the Debtor argues that Monty "concealed" rents, and that this concealment undermines the laches defense. Pl.'s Br. Supp.

Mot. for Summ. J. at 8. The Court rejects this argument. The Debtor was fully aware that Monty began collecting the rents from the Putnam Property before she filed her petition, as is evident from the undisputed fact that her attorney notified Monty of the bankruptcy filing. She was also certainly aware that she did not receive any rents from that time forward, even after the Trustee abandoned the property. Her only logical assumption was that Monty was collecting the rents again, since the Trustee had expressly disavowed any interest in the property. Based on the totality of the circumstances, the Court finds that the doctrine of laches applies and that even had she suffered actual damages, the Debtor would be barred from recovering for the violation of the automatic stay under § 362(h).

■ For the same reasons, it would be most inappropriate to award punitive damages, even had there been an injury to the Debtor. This is the wrong case in which to exact punishment. There is little intentional wrongdoing by Monty. And as noted above, the Debtor appears not to have been concerned while the alleged violation was ongoing. The Debtor appears at best to be an opportunistic "victim" with ethereal damages.

## B. Section 543(b)

Under 11 U.S.C. § 543(b), a custodian[12] shall:

(1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody or control on the date that such custodian acquires knowledge of the commencement of the case; and

(2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian.

---

12. The definition of "custodian" in the Bankruptcy Code includes a "receiver ... of any of the property of the debtor, appointed in a case or proceeding not under this title," and a "receiver ... under applicable law ... that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property." 11 U.S.C. § 101(11)(A), (C).

In count 3 of her Complaint, the Debtor requests that the Court order Monty to file an accounting of all rents he received from the Putnam Property, pursuant to § 543(b)(2). This request for relief is moot, since it is clear from the subsequently filed pleadings that Monty has turned over all of the contemporaneous documentation of his actions as receiver, and that those documents reveal the amount of rents received by Monty. The Debtor also requests that the Court enter judgment against Monty for the rents collected, pursuant to § 543(b)(1). It is very questionable whether the Debtor has standing to force a turnover of property under § 543(b)(1). *See Price v. Gaslowitz (In re Price),* 173 B.R. 434, 440–41 (Bankr.N.D.Ga. 1994) (applying 11 U.S.C. § 542).[13] Furthermore, even if the Debtor had standing to pursue this claim, the Court would find recovery by the Debtor to be barred by the equitable doctrine of laches. *See* part II.A.

## C. Sections 547 and 549

The Debtor argues that she could have exempted a portion of the rents, pursuant to § 522(h),[14] had they been recovered as a preference under § 547 or as unauthorized postpetition transfers under § 549. The Debtor's argument is flawed in both respects.

Monty would have a complete defense under § 547, as a matter of law. A preference may be avoided only if it "enables a creditor to receive more than such creditor would receive if ... the case were a case under chapter 7," the transfer was not made, and such creditor "received payment of such debt to the extent provided by the provisions of this title." § 547(b)(5)(A).[15] "Transfers to a fully-secured creditor ... are not avoidable as preferences, since the secured claim would be satisfied in full in a chapter 7 liquidation." *Travelers Ins. Co. v. Cambridge Meridian Group, Inc. (In re Erin Food Services),* 980 F.2d 792, 803 (1st Cir.1992); *see also Braunstein v. Eastern Airlines Employees Fed. Credit Union (In re Fitzgerald),* 49 B.R. 62, 65 (Bankr.D.Mass.1985) ("Generally, a trustee cannot recover a prepetition transfer or payment within ninety days to a fully secured creditor because the transfer only reduces secured debt and does not enable the secured party to receive more than would be forthcoming in a chapter 7 case."). The only exception is "where the value of the secured party's collateral is less than the amount of debt," because in that situation the "transfer to the undersecured party does deplete the estate and such a transfer is preferential." *Fitzgerald,* 49 B.R. at 65.

Here, the WPCA was secured by three liens on the property, at least two of which

---

13. The *Price* court held that, in order for a party other than the trustee to have standing to bring a § 543(b) claim, (i) the Trustee must have "unjustifiably refused to bring the action against the Defendant"; (ii) the party must "obtain leave of court to bring the suit"; and (iii) the party must have a colorable claim to the property sought to be turned over. *Id.* Although *Price* involved § 542, its analysis is equally applicable in the § 543 context. The facts here do not support any of the elements listed in *Price.*

14. Section 522(h) grants a debtor the power to avoid a transfer of property to the extent that the debtor could have exempted such property if the trustee had avoided such transfer "under section 544, 547, 548, 549, or 724(a) of this title ... and ... the trustee does not attempt to avoid such transfer." 11 U.S.C. § 522(h). If a debtor successfully avoids a transfer under § 522(h), he or she can recover the transferred property in the same manner and subject to the same limitations as the trustee, and may exempt any recovered property to the extent permitted in § 522(b). 11 U.S.C. § 522(i)(1).

15. Section 547 provides, in relevant part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer on an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

were unquestionably statutory in nature and thus unavoidable. *See* Conn. Gen.Stat. § 7–239 (1995) (municipal lien for water; "[t]he rates or charges established pursuant to this section, if not paid when due, shall constitute a lien upon the premises served...."); Conn. Gen.Stat. 7–258 (1995) (municipal lien for sewer; "[a]ny such unpaid connection or use charge shall constitute a lien upon the real estate...."); Conn. Gen.Stat. 16–262f. Even if Monty had not collected any rents from the Putnam Property, the WPCA would still have received the full amount owed for its provision of water and sewer services. The WPCA was not undersecured; both § 7–239 and § 7–258 provide that the utility liens "shall take precedence over all other liens or encumbrances except taxes." § 7–239(b); § 7–258. Accordingly, any action against the WPCA under § 547 would have failed.

■ A similar flaw is present in the Debtor's reliance on 11 U.S.C. § 549. That statute allows a trustee (or a debtor, pursuant to § 522(h)) to recover certain postpetition transfers. It provides that "the trustee may avoid a transfer of property of the estate ... that is not authorized under this title or by the court." § 549(a)(1)(B). The purpose of § 549 "is to ensure that similarly situated pre-petition creditors are treated even-handedly." *Dave Noake, Inc. v. Harold's Garage, Inc. (In re Dave Noake, Inc.)*, 45 B.R. 555, 557 (Bankr.D.Vt.1984); *see also Weiss v. People Savings Bank (In re Three Partners, Inc.)*, 199 B.R. 230, 237 (Bankr. D.Mass.1995). But, as with § 547, nothing would be achieved by recovering payment to a secured creditor who in any event is entitled to the payment ahead of other creditors. *See Three Partners*, 199 B.R. at 237 ("If the payments would be returned ultimately to the Bank upon disbursement of the assets of the estate, no benefit to the estate would accrue by their avoidance [under § 549].."); *Dave Noake, Inc.*, 45 B.R. at 557 (where creditor was secured to the full extent of debt owed it, postpetition payment of debt by debtor did not effect other creditors and was not avoidable under § 549).

### D. Section 524(a)

Section 524(a) provides that a discharge in bankruptcy, inter alia:

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 ... of this title, whether or not discharge of such debt is waived; [and]

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

The Debtor argues that § 524(a)(1) voided the judgment obtained by the WPCA in the Connecticut court for the unpaid utility bills, so that the receivership was permanently terminated upon the grant of the debtor's discharge. Following this argument, any actions taken by Monty after the Debtor was discharged violated § 524(a)(2).

■ However, the Debtor overlooks a key phrase in both subsections of § 524(a), namely that the debt or judgment involved must relate to the "personal liability of the debtor." "[A]n *in rem* judgment, based upon a prepetition lien and running solely against the debtor's property, would not be affected by the discharge." *4 Collier on Bankruptcy*, ¶ 524.02[1], at 524–13 (15th ed. rev.1997); *see also Johnson v. Home State Bank*, 501 U.S. 78, 82–83, 111 S.Ct. 2150, 2153–54, 115 L.Ed.2d 66 (1991). "Thus, a creditor may enforce a prepetition judgment lien after the discharge, if the automatic stay is no longer in effect and the lien has not been avoided, paid, or modified so as to preclude enforcement." *4 Collier on Bankruptcy*, ¶ 524.02[1], at 524–13. Here, the WPCA's liens were never avoided and the automatic stay terminated upon the granting of the Debtor's discharge. *See* § 362(c)(2). Accordingly, the receivership was not terminated and Monty's post-discharge actions pursuant to Conn. Gen.Stat. § 16–262f were perfectly legitimate.

### E. Mass. Gen. Laws ch. 93A, § 11 and Conn. Gen.Stat. § 42–110b

Finally, the Debtor claims that Monty and Hartconn violated the fair trade practice laws

of Massachusetts and Connecticut in using her tax identification number on federal tax forms and switching the order of the names on tax forms "to hide the fact that William J. Monty was receiving payments while using Plaintiffs social security number." Debtor's Second Am. Compl. at 8.[16]

The parties disagree over whether this dispute is core or non-core under 28 U.S.C. § 157(b). "Generally speaking, 'a procedure is core ... if it invokes a substantive right provided by title 11 or if it is a procedure that, by its nature, could arise only in the context of a bankruptcy case.'" *Noonan v. Cellu Tissue Corp. (In re Palmer Trucking Co., Inc.)*, 201 B.R. 9, 17 (Bankr. D.Mass.1996). Section 157(b) provides a non-exhaustive list of actions which constitute core proceedings. *Id.* If forced to choose, this Court would find these issues non-core. However, asserting any jurisdiction over these state law claims is problematical.

First, this Court does not have subject matter jurisdiction over these claims. Bankruptcy courts do not have jurisdiction over postpetition matters which are unrelated to the bankruptcy estate. *See Goldstein v. Marine Midland Bank, N.A. (In re Goldstein)*, 201 B.R. 1 (Bankr.D.Me.1996) (analyzing § 1334 and concluding that court did not have "arising under," "arising in," or "related to" jurisdiction over state law tort claims and claims under Federal Debt Collection Procedures Act where the allegations involved postpetition conduct and thus in no way impacted the administration of the bankruptcy estate; court also concluded that "supplemental jurisdiction" under 28 U.S.C. § 1367 was not available to bankruptcy courts); *Boyajian v. DeLuca (In re Remington Development Group, Inc.)*, 180 B.R. 365 (Bankr. D.R.I.1995) (Haines, J., sitting by designation) (same holding with respect to third-party complaint between a creditor and creditor's counsel for indemnification and damages).

Second, even assuming proper jurisdiction over these claims, it would be more appropriate that this Court abstain. Section 1334(c)(1) of title 28, U.S.Code, provides: "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." Some courts have listed numerous factors to be considered in making this determination. *See In re Republic Reader's Serv., Inc.*, 81 B.R. 422, 429 (Bankr. S.D.Tex.1987) (listing 12 factors); *see also, Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1167 (9th Cir.1990); *Schulman v. California State Water Resources Control Bd. (In re Lazar)*, 200 B.R. 358, 372–73 (Bankr.C.D.Cal.1996). However, given the facts of this case, the Court need only highlight a few germane considerations.

The acts which the Debtor complains of with respect to the tax forms occurred substantially after the filing of the case, the granting of the Debtor's discharge, and even the first closing of the case. The underlying claim relates to a report made by two third parties to a federal agency, which may or may not have agreed with the information provided by those parties. Those actions had no conceivable effect on the bankruptcy estate, and, from what has been presented to the Court, little, if any, effect on the Debtor. Even if the Debtor could divine related-to jurisdiction to resolve this dispute,[17] the creditors in this case would be in no way impacted. And the Debtor's fresh start in this Chapter 7 case is in no way threatened. In the end, the acts of which the debtor complains occurred in her post-bankruptcy life, in a non-bankruptcy forum, and should

---

**16.** In the Debtor's "Opposition to Motion of [the WPCA], the Town of Putnam, ... Monty and Hartconn ... for Summary Judgment," she attempts to incorporate other allegations relating to violations of "bankruptcy laws and regulations" and "criminal laws" into her unfair trade practices count. Debtor's Opp'n at 20. These allegations are stricken as they are not the subject of a court-approved amended complaint. *See* Fed. R. Bankr.P. 7015; Fed.R.Civ.P. 15(a).

**17.** For an excellent analysis and treatment, *see Boyajian v. DeLuca, et al. (In re Remington Dev. Group, Inc.)*, 180 B.R. 365 (Bankr.D.R.I.1995) (Haines, J., sitting by designation).

be disposed of by a non-bankruptcy court. *See Cumberland Farms, Inc. v. Town of Barnstable (In re Cumberland Farms, Inc.),* 175 B.R. 138, 143 (Bankr.D.Mass.1994). Accordingly, discretionary abstention under § 1334(c)(1) would be warranted if this Court had jurisdiction over this matter.

### III. *Conclusion*

For the reasons stated above, the Debtor's Motion for Summary Judgment is denied, and Monty's motion for summary judgment is granted as to all claims brought against him except the unfair trade practice claim. The Court dismisses the unfair trade practice claim without prejudice, and thus, Hartconn's motion for summary judgment is denied as moot. A separate judgment in conformity with this Memorandum of Decision shall enter in conjunction with the decision.