## In re Philip STEENSTRA, Debtor.

### No. 01–40038.

United States Bankruptcy Court,
D. Massachusetts.

July 24, 2002.

Gregory Hession, Belchertown, MA, L. Jed Berliner, Springfield, MA, for debtor.

Jeffrey S. Ogilvie, Counsel for the Commissioner, Dept. of Revenue, Litigation Bureau, Boston, MA, for defendants.

Denise M. Pappalardo, Worcester, MA, Chapter 13 Trustee.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is the "Debtor's Motion for Sanctions Against the Massachusetts Department of Revenue for Violations of the Automatic Stay" (the "Sanctions Motion"), filed by the Debtor Philip Steenstra (the "Debtor"). As originally filed, the Sanctions Motion sought monetary damages against both the Massachusetts Department of Revenue (the "MDOR")[1] and its attorney, Janet Fennell ("Ms. Fennell"). The Debtor subsequently withdrew his request for sanctions against the MDOR, however, the Debtor continues to pursue his request for monetary sanctions against Ms. Fennell, personally.

The Court has conducted a trial of the disputed factual issues and the parties have submitted briefs with respect to the disputed issues of law. The following constitute this Court's findings of fact and conclusions of law, pursuant to Fed. R.Bankr.P. 7052 as made applicable to this contested matter in accordance with Fed. R.Bankr.P. 9014.

### I. FACTS AND TRAVEL OF THE CASE

The Debtor and his former wife Sandra Steenstra have been embroiled in litigation regarding the Debtor's child support obligations for quite some time. On August 5, 1987, the Commonwealth of Massachusetts Probate and Family Court, Worcester Division (the "Probate Court") entered a Judgment of Divorce Nisi, dissolving the marriage of the Debtor and Sandra Steenstra. Incorporated in the divorce judgment was a stipulation between the Debtor and Sandra Steenstra pursuant to which the Debtor was to make support payments for the Debtor's two children. The terms of the stipulation were apparently not met and in late 1999, the MDOR interceded on behalf of Sandra Steenstra and the children by filing a Complaint for Contempt in the Probate Court.[2]

Ultimately, the parties entered into a further stipulation, pursuant to which the Debtor agreed to satisfy his current and prior support obligations through future payments and further agreed to appear at a status hearing in the Probate Court to be held on March 15, 2000. MDOR claims that the Debtor failed to meet his payment obligations under this latter stipulation. The Debtor also allegedly failed to appear at the March 15, 2000 status conference. Accordingly, the Probate Court issued a capias warrant for his arrest. For reasons not here relevant, MDOR did not act promptly on the capias. It was not sent to the Worcester County Sheriff's Department (the "Sheriff's Department") for execution until January 3, 2001, some 9 months after it was issued.

On January 2, 2001, the Debtor filed a case in this Court under Chapter 13 of the Bankruptcy Code. On January 12, 2001, before any action was taken on the capias,

---

**1.** The Debtor's motion refers specifically to the Massachusetts Department of Revenue Child Support Enforcement Division. As such, any further reference to the MDOR will be limited to that department unless otherwise noted.

**2.** The grounds for contempt alleged in the Complaint were the Debtor's failure to pay child support obligations.

Debtor's counsel notified MDOR of the bankruptcy case filing, and on that same day MDOR recalled the capias.

Ms. Fennell was the attorney assigned to represent MDOR (on behalf of the Debtor's former wife and children) with respect to collection of the child support arrearage from the Debtor. Following the bankruptcy case filing, she consulted with another attorney in the Child Support Enforcement Division to determine its ramifications on MDOR's collection effort. He advised her that, in his opinion, the automatic stay under 11 U.S.C. 362(a) did not extend to actions to collect postpetition child support obligations. Accordingly, on March 14, 2001, Ms. Fennell caused MDOR to generate a letter to the Debtor's employer, All–In–One & More Insulation ("All–In–One"), requesting a wage assignment (the "March 14 Letter"). The March 14 Letter was received by All–In–One's office manager, Sandra Goodwin, who, in turn, contacted the Debtor and thereafter spoke to the Debtor's counsel. The Debtor's counsel advised Ms. Goodwin that the automatic stay prevented the MDOR from requesting such a wage assignment on account of child support obligations and advised Ms. Goodwin to do nothing with the request. No action was indeed taken by All–In–One and the Debtor's wages were not withheld. On May 1, 2001, a second letter was automatically generated by the MDOR without any further prompting by Ms. Fennell (the "May 1 Letter"). Again, no action was taken by All–In–One with respect to this second request.

On March 16, 2001, the Chapter 13 Trustee moved that the Debtor's case be dismissed for reasons not relevant to this dispute. The Debtor filed no response and on April 11, 2001, the case was dismissed.

On April 19, 2001, the Debtor filed a motion to vacate the dismissal order. After a hearing held on April 24, 2001, the motion was granted and the case was reinstated. However, in the period between the dismissal of the case and its reinstatement, Ms. Fennell received a call from Sandra Steenstra, advising her of the case dismissal. Ms. Fennell promptly verified this information by checking with the Bankruptcy Court Clerk's Office. It confirmed the case dismissal. However, Ms. Fennell never received any actual notice of the case's subsequent reinstatement. Although the motion to vacate and the hearing thereon were served on MDOR at its Tax Division, that notice was not forwarded or in any way communicated to its Child Support Enforcement Division or Ms. Fennell personally.[3]

Unaware of the case reinstatement, Ms. Fennell, on or about May 2, 2001, caused a duplicate capias to be forwarded to the Sheriff's Department for enforcement. During a "capias sweep" on May 30, 2001, the Debtor was apprehended and spent the night in jail. On the morning of May 31, 2001, a representative from the Sheriff's Department advised the MDOR Child Support Enforcement Division that it had the Debtor in custody and was bringing him to the Probate Court. That representative also noted that the Debtor was claiming protection under the automatic stay. While Ms. Fennell left for the Probate Court, the MDOR service process coordinator checked again with the Bankruptcy Court Clerk's Office and learned of the case reinstatement. At the hearing

---

**3.** It is unclear why the Debtor failed to notice the Massachusetts Department of Revenue at its Child Support Enforcement Division when counsel for the Debtor sent the Suggestion of Bankruptcy to that division of MDOR in January of 2001 without difficulty. Further, the Debtor subsequently amended his matrix and actually deleted the address for the Child Support Enforcement Division.

that day before the Probate Court, Ms. Fennell was first informed that MDOR had confirmed that the case had been reinstated. Accordingly, Ms. Fennell suggested to the Probate Court Judge that, in light of this new information, the Debtor's release was mandated. The Debtor was promptly released.

## II. *POSITIONS OF THE PARTIES*

The Debtor argues that MDOR and Ms. Fennell repeatedly took actions on and after January 2, 2001 which violated the automatic stay. He maintained that these alleged violations included at least two (2) visits to the Debtor's place of business by representatives from the Sheriff's Department, two (2) letters sent to the Debtor's employer requesting wages assignments, phone calls following up on those letters, and finally, of course, the Debtor's incarceration based on a capias reissued by the Probate Court for failure to appear for a review hearing before the Probate Court. Each of these actions, the Debtor maintains, was taken during a time when the automatic stay was in effect and the MDOR and Ms. Fennell had, or should have had, notice of the stay. The Debtor further contends that Ms. Fennell's knowledge of the case reinstatement should be imputed from the notice granted to the Tax Division of MDOR. Moreover, the Debtor argues that the MDOR Child Support Enforcement Division and Ms. Fennell should be deemed to have notice of the motion to vacate the dismissal and the hearing thereon, because service on MDOR was made at the address provided in the Massachusetts Local Bankruptcy Rules Appendix 4 for service on the Massachusetts Department of Revenue.[4]

Ms. Fennell contends that the alleged actions taken by her either did not occur or did not violate the automatic stay. She testified that she did not place, or caused to be placed, calls to the Debtor's place of employment and that the capias sent to the Worcester County Sheriff's Department in January of 2001 was recalled upon notification of the Debtor's bankruptcy case filing. As to the Debtor's claim that on two occasions representatives from the Sheriff's Department visited his place of employment, Ms. Fennell argues that any appearance by a deputy sheriff at the Debtor's place of employment prior to May, 2001 could not have been related to the Debtor's child support arrearages because a new capias was not forwarded to the Sheriff's Department until May of 2001. As for the Debtor's claim that the two (2) letters sent to his employer requesting wage assignments were stay violations, Ms. Fennell claims that she was led to believe, by another MDOR attorney, that neither letter would violate the automatic stay because they addressed postpetition obligations. She also contends that, at the time of the May 1 Letter's issuance, she had no knowledge of the reinstatement of the case and resurrection of the automatic stay. Similarly, she had no knowledge of the reinstatement of the automatic stay when she obtained a new capias and had it served in May of 2001, resulting in the seizure and imprisonment of the Debtor. Absent such knowledge, Ms. Fennell argues, she cannot be deemed to have "wilfully" violated the stay. Finally, Ms. Fennell maintains that M.G.L.A. c. 119A

4. While this Court agrees that the lack of communication between MDOR's two divisions is troubling, it need not reach the question of whether knowledge between those two divisions should be imputed. The Debtor has withdrawn his § 362(h) claims against MDOR and continues to assert such claims only against Ms. Fennell. Further, this Court finds that Ms. Fennell did not have actual notice of the case reinstatement, and knowledge actionable under § 362(h) can not be imputed.

§ 12 and the support order vest a property interest in the Debtor's children, taking that portion of his wages out of the bankruptcy estate and making them exempt from the stay's protection under § 362(b)(2)(B).

## III. DISCUSSION

 The automatic stay under 11 U.S.C. § 362(a) of the Bankruptcy Code is a critical component of the Code's dual mandate to provide a fresh start to the honest debtor and to ensure a uniform distribution of nonexempt assets to creditors of the same class.[5] It "springs into being immediately upon the filing of a bankruptcy petition" and acts to prevent a scramble by creditors to "capture the lion's share of the debtor's assets." *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975 (1st Cir.1997). The stay provides breathing space for the debtor while at the same time protecting creditors from one another. *Id.*

 Where the automatic stay is violated in a case relating to an individual debtor, the Code explicitly provides a remedy. Section 362(h) provides that "[a]n individual injured by any willful violation of the automatic stay is entitled to recover 'actual damages, including costs and attorney's fees, and, in appropriate circumstances, ... punitive damages.' " 11 U.S.C. § 362(h). The movant must demonstrate that the stay violation occurred and was committed willfully by the respondent, and that the movant was damaged. *Adams v. Hartconn Assocs., Inc. (In re Adams)*, 212 B.R. 703, 708 (Bankr.D.Mass.1997).

### A. *Acts in Violation of the Automatic Stay*

 At the outset, it is necessary to pare down the list of the Debtor's allega-

tions because the Debtor failed to persuade this Court that all of the events to which he testified actually occurred. For example, the Debtor testified that numerous phone calls to his employer were made by Ms. Fennell, purportedly to collect child support, and that the Worcester Sheriffs visited his place of employment on behalf of MDOR on at least two (2) occasions. The Debtor failed to persuade this Court that those allegations were true. Nevertheless, this Court has identified three specific actions that are clearly supported by the facts and require further analysis to determine whether they were taken in violation of the automatic stay. The actions in question were: 1) the March 14 Letter to All–In–One requesting an assignment of wages, 2) the follow up May 1 Letter, and 3) the reissuance of the capias in May of 2001, leading to the Debtor's arrest.

The Bankruptcy Code provides a litany of actions proscribed during the pendency of the automatic stay. Section 362(a) provides in relevant part:

> (a) Except as provided in subsection (b) of this section, a petition ... operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> ...
>
> (3) any act to obtain possession of property of the estate or of property from

---

**5.** Because the automatic stay is of benefit to creditors as well as Debtors, it applies regard-

less of any ultimate determination of the Debtor's honesty.

the estate or to exercise control over property of the estate . . . .

11 U.S.C. § 362(a).

Both the March 14 and May 1 letters, as well as the reissuance of the capias, leading to the Debtor's arrest and incarceration, fit well within the definitions of those acts precluded by § 362(a)(1) and (3). The Debtor's obligations to pay child support arose by order of the Probate Court. Ms. Fennell sought to enforce that Probate Court order first by attempting to attach the Debtor's postpetition wages and then by causing the Debtor to be arrested in order to compel payment of those obligations. Additionally, because in a Chapter 13 case, a debtor's wages earned postpetition are included as property of the estate, 11 U.S.C. § 1306(a) [6], the foregoing actions constituted violations of § 362(a)(3) as well.

■■ Ms. Fennell maintains that her actions were exempted under § 362(b)(2).[7] That argument would have merit were the Debtor in a Chapter 7 case where postpeti-

tion earnings are excluded from estate property. 11 U.S.C. § 541(b)(5). However, the exemption does not apply where the Debtor is in Chapter 13. Ms. Fennell also argues that the Support Order and M.G.L.A. c. 119A § 12, vested a property interest in the children, and, therefore, the Debtor's wages, to the extent of the wage assignment, never became property of the estate. That novel theory has no basis either in the language of the statute, the Probate Court Order, or more importantly, the Bankruptcy Code and caselaw.[8]

### B. *Willfulness Under § 362(h)*

Having determined that the actions of Ms. Fennell violated the automatic stay under § 362(a), this Court must now determine whether those actions were "willful."

■ The First Circuit Court of Appeals has recently examined the meaning of the term "willful" for the purposes of § 362(h) in *Fleet Mortgage Group, Inc. v. Kaneb (In re Kaneb)*, 196 F.3d 265 (1st Cir.1999). The *Kaneb* court noted that a

---

**6.** 11 U.S.C. § 1306(a) states:

Property of the estate includes, in addition to the property specified in section 541 of this title—
(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

**7.** Section 362(b) states in relevant part:

The filing of a petition . . . does not operate as a stay—
. . .
(2) under subsection (a) of this section—
(A) of the commencement or continuation of an action or proceeding for—

(i) the establishment of paternity; or
(ii) the establishment or modification of an order for alimony, maintenance, or support; or
(B) of the collection of alimony, maintenance, or support from property that is not property of the estate
11 U.S.C. § 362(b).

**8.** In its "Memorandum of Law in Support of . . . Supplemental Opposition to Debtor's Motion for Sanctions," the MDOR makes a spirited attempt to persuade the Court that, once the Probate Court enters a child support order, the child has an equitable interest in a Debtor's postpetition earnings, and, accordingly, the earnings are no longer property of the estate. The cases cited by MDOR are inapposite in a Chapter 13 case. Pursuant to § 1306(a)(2), property of the estate is extended to include all "earnings from services performed by the debtor after the commencement of the case." There is no statutory exclusion for earnings payable for the benefit of family support.

good faith belief in a right to act is not relevant to the determination of whether the act violates the automatic stay. *Id.* at 268–69. "A willful violation does not require a specific intent to violate the automatic stay. The standard for a willful violation of the automatic stay under § 362(h) is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." *Id.* at 269.[9]

■ There is no doubt that the March 14 Letter to All–In–One seeking institution of a wage assignment was sent to collect child support payments directly from the Debtor's postpetition wages at time when Ms. Fennell knew that the bankruptcy case (and the automatic stay) was extant. Ms. Fennell has not contested the receipt of the Debtor's suggestion of bankruptcy shortly after the case was filed. Nor does she argue that she believed the stay was no longer in effect at the time the letter was drafted and sent to All–In–One. Although Ms. Fennell testified that she did not personally send the letter, she conceded that it was sent at her direction.

Ms. Fennell complains that she did not "intend" to violate the stay. She firmly believed, after checking with an MDOR colleague, that sending a letter for the purpose of collecting a postpetition debt, was not a violation of the automatic stay. However, "a good faith belief in a right to property is not relevant to a determination of whether the violation was willful." *Kaneb* at 268–69. Under the *Kaneb* analysis, Ms. Fennell's intent is of no consequence. *Id.* at 269 ("A willful violation does not require a specific intent to violate the automatic stay.") All that is required is knowledge of the existence of the stay and an intent to commit the act which violated the stay. *Id.* Those elements are both conclusively met.

■ The May 1 Letter and the May 2001 capias which led to the Debtor's arrest, present a different picture and can be addressed together. According to Ms. Fennell's undisputed testimony, she first became aware of the bankruptcy case filing on or about January 12, 2001, but was subsequently advised by Sandra Steenstra that the case had been dismissed on April 11, 2001. Dismissal of a bankruptcy case terminates the automatic stay. 11 U.S.C. § 362(c)(2)(B). Indeed, Ms. Fennell confirmed the case dismissal by checking with the bankruptcy court itself. Subsequently, of course, the Debtor moved to vacate the dismissal, and the dismissal was vacated. However, the Debtor took no steps to advise the Child Support Enforcement Division of the case reinstatement, notwithstanding the Debtor's longstanding difficulties with that division of MDOR, and the undisputed testimony reflected no notice of that reinstatement ever given to Ms. Fennell. This Court finds that Ms. Fennell did not become aware of the reinstatement until May 31, 2001, long after the May 1 Letter and the reissuance of the capias which led to the Debtor's arrest. As a result, the Debtor has failed to demonstrate Ms. Fennell's actual knowledge of the existence of the automatic stay. *See Kaneb* at 269 (stating that "[t]he debtor has the burden of providing the creditor with actual notice.") This Court finds and rules that Ms. Fennell's actions, with respect to the May 1 Letter and the May 2001 capias, were not willful within the meaning of § 362(h).

---

9. The broader interpretation of "willfulness", disfavored in this Circuit, finds a violation only if the creditor knew of the petition and *intended* to violate the stay. *See In re Adams* at 708 (describing the broader view taken in other cases, but adopting the narrower view of "willfulness" subsequently accepted by the First Circuit in *Kaneb*).

## C. *Damages*

■ Pursuant to § 362(h), an individual injured by a willful violation of the automatic stay is entitled to actual damages, including costs and attorney's fees, and, where appropriate, punitive damages. 11 U.S.C. § 362(h); *see also, In re Adams* at 708 (Debtor must demonstrate that the "violation ... injured the individual seeking damages.") Having established that Ms. Fennell wilfully violated the automatic stay by directing the March 14 Letter to the Debtor's employer, the Court must determine the amount of actual and/or punitive damages to which the Debtor is entitled. The Debtor must prove those damages by a preponderance of the evidence. *See Clayton v. King (In re Clayton)*, 235 B.R. 801, 806 (Bankr.M.D.N.C. 1998) ("In a motion for imposition of sanctions under § 362(h), the debtor bears the burden of proof by the preponderance of the evidence,") (citations omitted); *In re Flack*, 239 B.R. 155, 162 (Bankr.S.D.Ohio 1999) ("In stay violation litigation, debtors bear the burden of proof to establish by a preponderance of the evidence ... that the debtors suffered damages.")

■ Easiest to determine is whether there is an appropriate basis for punitive damages. This Court finds none. While Ms. Fennell's ignorance of the stay's application and her consultation with a colleague are of no relevance on the question of whether the March 14 Letter was "willful" for the purposes of § 362(h), Ms. Fennell's intent and the actions that she took *are* relevant to the question of punitive damages. *See In re Barboza*, 211 B.R. 450, 453 (Bankr.D.R.I.1997) (stating that "[t]o recover punitive damages, the violator must have acted with actual knowledge that he was violating a federally protected right or with reckless disregard of whether he was doing so," citing *Cochetti v. Desmond*, 572 F.2d 102, 106 (3rd. Cir.1978)); *Flack* at 163 ("Punitive damages are only awarded where creditors have demonstrated egregious, vindictive or intentional misconduct." citing *Clayton*). Here, Ms. Fennell believed she was acting properly. She was not reckless in her actions. Indeed, Ms. Fennell even took the extra care to consult with another attorney who gave her an opinion on the subject, albeit inaccurate. Punitive damages for violation of the automatic stay are often awarded as a deterrent to prevent similar future acts. *Varela v. Ocasio (In re Ocasio)*, 272 B.R. 815, 825 (1st Cir. BAP 2002). There is no reason on this record why Ms. Fennell should be punished for her actions in sending the March 14 Letter. She acted out of ignorance and it is highly unlikely that Ms. Fennell will miscalculate the import of the automatic stay in the future.

■ Actual damages are another matter. Here, Ms. Fennell's intent is not relevant. However, the burden remains on the Debtor to prove his actual damages. *See In re Dunn*, 202 B.R. 530, 531 (Bankr. D.N.H.1996) (the debtor has "the burden of proof with regard to showing that ... the willful violation caused the movants to suffer harm and incur damages, and then to show what relief is appropriate.") He has failed to do so. The Debtor testified at length with respect to his embarrassment when representatives of the Sheriff's Department allegedly visited his place of employment, however, this Court has found that if deputy sheriffs visited his workplace, those visits were unrelated to actions taken by Ms. Fennell. The Debtor also testified with respect to the emotional distress suffered by his arrest.[10] However-

---

10. In *Kaneb,* the First Circuit Court of Appeals acknowledged that mental anguish could serve as the basis for an award of actual damages, but did not reach the question of

er, this Court has found that the Debtor's arrest was on account of actions with respect to which Ms. Fennell is not culpable under § 362(h). With respect to the one act that this Court has determined was a violation of the automatic stay—issuance of the March 14 Letter—the Debtor failed to elucidate his harm. The Debtor's employer never acted on the MDOR wage assignment request and no funds on account thereof were ever withheld from the Debtor's paycheck. The Debtor never suffered any loss of wages. Moreover, the Debtor failed to testify to any mental anguish, social or reputational harm, such as that proven in *Kaneb,* or job insecurity resulting from the March 14 Letter. Consequently, this Court finds no compensable damages suffered by the Debtor through this ordeal, other than attorney's fees.

■ Thus the remaining question is whether the Court should award the Debtor his attorney's fees incurred as a result of the March 14 Letter. The Court presumes that there were some. However, in the two days of trial, no testimony was offered with respect to the question of attorney's fees, and among the various exhibits offered and admitted, none relating to this question were submitted. The only "evidence" of damages on account of attorney's fees was an affidavit by Debtor's counsel, attached to the Sanctions Motion. The affidavit was never submitted into evidence at trial and, even if it were, it would not have been particularly helpful. It references a grand total of time spent by Debtor's counsel up to August 4, 2001. It contains no specific time entries and no breakdown of services from which the Court might determine the amount of fees, if any, were incurred on account of the March 14 Letter.

the evidence required to support such a claim (as that question was not argued below). 196

This Court can not manufacture the evidentiary support for damages out of whole cloth. Proof of actual damages was the Debtor's burden. That burden was not met. Where there are no damages proved, none can be awarded.

## IV. CONCLUSION

For all of the foregoing reasons, the Debtor's Sanctions Motion is DENIED. Although the Debtor did demonstrate a single act by Ms. Fennell which violated the automatic stay, the Debtor failed to demonstrate any damages arising therefrom.

A separate order in conformity with this Memorandum of Decision shall enter herewith.

### ORDER

For the reasons set forth in the Memorandum of Decision of even date, the Debtor's Motion for Sanctions for Violations of the Automatic Stay is DENIED.