**In re Agustin ROSA, Debtor**

No. 03–41274.

United States Bankruptcy Court,
D. Massachusetts.

Aug. 11, 2004.

Joseph J. Lange, Lyon & Fitzpatrick, Holyoke, MA, for Agustin Rosa.

Michael R. Siddall, Siddall and Siddall, Springfield, MA, for City of Chicopee.

Denise Pappalardo, Worcester, MA, for Chapter 13 Trustee.

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is a "Motion To Find the City of Chicopee in Violation of Automatic Stay, Void Any Tax Takings and Award Sanctions and Damages to the Debtor" (the "Stay Motion"), filed by Agustin Rosa (the "Debtor"). The Court has already found and ruled that the City of Chicopee, Massachusetts (the "City") has violated the automatic stay under 11 U.S.C. § 362(a).[1] The remaining issue is whether damages should be awarded to the Debtor.

### I. FACTS

The Debtor filed a Chapter 13 bankruptcy petition on March 10, 2003. In his bankruptcy schedules, the Debtor listed the City as a secured creditor holding a tax lien on his three-family house. The Debtor served his Chapter 13 Plan on the City on March 24, 2003, employing four different addresses. In addition, on April 7, 2003, the Bankruptcy Court Clerk's Office mailed a "Notice of Commencement" of the bankruptcy case to the City. Approximately three weeks later, on April 29, 2003, the City filed a proof of claim in the amount of $6,977.35 for unpaid municipal taxes.

The case proceeded uneventfully until May 28, 2003, two and one half months after the bankruptcy filing, when the City published a notice of tax taking against the Debtor's property in the local newspaper, *The Republican.* Shortly thereafter, the City sent the Debtor a letter informing him of that action and enclosed a copy of the newspaper advertisement.[2] On July 2, 2003, the City recorded a tax taking of the Debtor's property with the Registry of Deeds (the "Tax Taking"). Debtor's counsel filed the Stay Motion on July 16, 2003, and the City immediately disclaimed the Tax Taking by filing a "Disclaimer and Release" with the Registry of Deeds. But the story does not end there. Prior to the first hearing on the Stay Motion, the City yet again took action in pursuit of the Debtor's unpaid taxes. On August 15, 2003, the City Treasurer's office sent the

---

1. At a non-evidentiary hearing held on September 4, 2003, the Court found the City in violation of the automatic stay based on the facts recited herein. The Debtor's additional request that the Court void any tax takings has been rendered moot as a result of a Disclaimer and Release of the tax lien recorded by the City on July 21, 2003.

2. The newspaper publication and subsequent letter sent to the Debtor have been grouped together by the Debtor in both pleadings and oral arguments. Therefore, for these purposes, they shall be treated as one action (the "Notice of Tax Taking").

Debtor a notice of impending foreclosure (the "Notice of Impending Foreclosure").[3]

The Debtor received the Notice of Tax Taking and the Notice of Impending Foreclosure on two separate Saturdays and, over the course of each weekend, he and his wife suffered from great emotional distress, including loss of appetite and sleep. On each of the following Mondays, the Debtor was reassured by his attorney, and on each occasion his distress abated after that conversation.

The City concedes that the automatic stay was violated. The City maintains, however, that, while it is willing to pay the actual damages of the Debtor, it should not be obligated for additional damages.[4] It contends that punitive damages and attorneys' fees are inappropriate because the violations were not committed with deliberate malice, but rather were "inadvertent."

The City represents that the issuance of the Notice of Tax Taking and the recording of the Tax Taking were the result of a mistaken belief that the Debtor's case had been dismissed or discharged. The City Collector's office maintains a computer file on each taxpayer. When notice of a bankruptcy filing is received, a note is added to the computer file. When a tax title list is prepared, the City Collector's office removes those individuals who have been identified as in bankruptcy. The City Collector admits that her department received notice of the Debtor's bankruptcy; however, because her assistant *thought* that she saw a dismissal or discharge of the Debtor amongst later communications from the Bankruptcy Court, the Debtor was reinserted on the tax title list. No dismissal or discharge had, in fact, been entered in the Debtor's case, nor had any notice of the Debtor's dismissal or discharge been sent to the City by the Court. The City Collector testified that she was unaware of the error until she received the Debtor's Stay Motion in mid-July, 2003.

At some point between the issuance of the Tax Taking and the filing of the Debtor's Stay Motion, the Debtor's file was electronically transferred to the City's Treasurer's office.[5] When the Stay Motion was subsequently received, the City Collector verbally informed the Treasurer of its receipt, but she does not remember informing the Treasurer of the Debtor's name. The Treasurer instructed the City Collector to notify the City's Law Department but took no further action.[6] At no time during the approximately one month period between the date the City Collec-

---

3. At trial, the Debtor also alleged an automatic stay violation for the City's failure to release a "hold" that had been placed upon the Debtor's drivers license for failure to pay 2001 and 2002 excise taxes. This alleged violation was not included in the pleadings. For that reason, the City objected to introduction of that evidence in the instant evidentiary hearing and the Court sustained the objection.

4. The offer to pay is certainly not unqualified. Better stated, the City stands ready to pay the amount of actual damages that *it believes* were incurred.

5. The City represents that the computer systems of the City Collector's Office and the City Treasurer's Office, while employing the same software, are not fully networked. Accordingly, the two offices were unable to access each other's notes.

6. The Treasurer did not testify or appear in Court. The conversation between the City Collector and the Treasurer was relayed by the testimony of the City Collector. The Assistant City Treasurer, who did take the stand, testified that she had no knowledge of the conversation between the City Collector and the Treasurer. The Assistant City Treasurer further testified that, prior to sending the Notice of Impending Foreclosure, she was not aware that the Debtor was in bankruptcy or that the recorded Tax Taking had been disclaimed by the City.

tor's Office learned of its error and the date the Treasurer's office sent the Notice of Impending Foreclosure did the City Collector take any other steps to rectify the error or notify the Treasurer's office of the pendency of the bankruptcy case. At no time did the Treasurer inquire further with respect to the information he received from the City Collector. On August 15, 2003, the Treasurer's office issued the Notice of Impending Foreclosure.

## II. *DISCUSSION*

The automatic stay provision of the Bankruptcy Code provides in relevant part:

> (a) ... a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of:
>
> > (1) the commencement or continuation, including the issuance of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> >
> > . . . .
> >
> > (4) any. act to create, perfect, or enforce any lien against property of the estate;
> >
> > (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
> >
> > (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C. § 362(a) (2004).

■ The purpose of the automatic stay is two-fold. First, the stay protects the estate and gives a trustee the opportunity to marshal and distribute the assets. *See, e.g., Nelson v. Taglienti (In re Nelson),* 994 F.2d 42, 44 (1st Cir.1993). Second, it gives the debtor "breathing room," stopping all collections, foreclosures, and harassment. *See, e.g., In re Soares,* 107 F.3d 969, 975 (1st Cir.1997); *Shadduck v. Rodolakis,* 221 B.R. 573, 582 (D.Mass. 1998).

■ Like anything else, the automatic stay is meaningless if not enforced. *See, In re Soares,* 107 F.3d at 971. 11 U.S.C. § 362(h) was enacted as a tool to enforce the stay and provide individual debtors with a recourse from violations. It provides that:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h) (2004).

Having previously found the City in violation of the automatic stay, the applicability of sanctions requires a two part analysis: (1) Should actual damages be imposed; and (2) If actual damages should be imposed, are punitive damages also warranted?

### A. Actual Damages

■ A debtor is charged with establishing three separate elements before actual damages will be imposed for violation of the automatic stay. *Adams v. Hartconn Associates (In re Adams),* 212 B.R. 703, 708 (Bankr.D.Mass.1997). First, a violation of the automatic stay must have occurred. *Id.* Second, the violation must have been committed willfully. *Id.* Third, the violation must have injured the debtor. *Id.* The first element is beyond dispute.

The stay was obviously violated by the City's notices, publications and recording in the registry of deeds. The second element also presents little analytical difficulty. For the purposes of 11 U.S.C. § 362(h), "wilfulness" is found where "(1) [the creditor] has knowledge of the petition, and (2) the act which violates the stay was intentional." *Adams v. Hartconn Associates, Inc.*, 212 B.R. at 708–09; *Fleet Mortgage Group v. Kaneb*, 196 F.3d 265, 269 (1st Cir.1999). The creditor need only intend the act itself, it need not intend to violate the stay. *Adams v. Hartconn Associates, Inc.*, 212 B.R. at 708–09. Here, the City intentionally issued both the Notice of Tax Taking and the Notice of Impending Foreclosure and intentionally recorded the Tax Taking. Though the City contends that it was unaware of the bankruptcy when it issued the Notice of Tax Taking and recorded the Tax Taking, it received more than enough notice of the bankruptcy case and its subsequent ignorance was entirely self-created. Once the Debtor provided sufficient notice to the City of the pending bankruptcy, the burden shifted to the City to prevent any violations of the automatic stay. *Fleet Mortgage Group v. Kaneb*, 196 F.3d at 269. It failed to meet that burden.

 Whether and the extent to which the City's violations of the automatic stay injured the Debtor are more difficult questions. It is the burden of the Debtor to prove actual damages by a preponderance of the evidence. *In re Steenstra*, 280 B.R. 560, 569 (Bankr.D.Mass.2002) (citations omitted); *see also, In re Still*, 117 B.R. 251, 254 (Bankr.E.D.Tex.1990). The Debtor asserts two types of injury resulting from the City's violations of the automatic stay. First, the Debtor asserts that he suffered emotional distress between the dates he received the Notice of Tax Taking and the Notice of Impending Foreclosure and the dates of his conversations with his attorney. Emotional distress is an actual injury for which a debtor may recover damages. *Fleet Mortgage Group v. Kaneb*, 196 F.3d at 269 (citing to *Holden v. IRS (In re Holden)*, 226 B.R. 809, 812 (Bankr.D.Vt.1998)). The Debtor testified credibly with respect to his emotional upset and lack of appetite and sleep. While it is true that the Debtor's distress lasted over only two weekends, the Court declines to categorize it as nominal. Concern that one's home may be taken unjustly is not inconsequential, and even one sleepless night holding such a belief must seem an eternity. In the case at hand, the City twice led the Debtor to believe that his home was in jeopardy, despite his bankruptcy filing. The Court finds that the Debtor is entitled to the amount of $2,000.00 in actual damages for each of the subject weekends on account of that emotional distress.[7]

 Second, the Debtor asserts that he suffered a medical injury in the form of high blood pressure. Indeed, he was hospitalized for that ailment in November, 2003 and was unable to work for one week following his hospitalization. At the time of trial, he continued to take medication for his condition. The Debtor submitted, however, no documentation of any medical costs incurred. Further, the City entered into evidence the Debtor's medical records which revealed that he had been twice admitted to the hospital for similar episodes in 1999, well prior to any alleged violations by the City. The Debtor

7. This award should not be misinterpreted as a blanket grant of emotional distress damages for every violation of the automatic stay. Bankruptcy courts are well equipped to evaluate the reasonableness of emotional injuries on a case by case basis. *See United States v. Torres (In re Torres)*, 309 B.R. 643 (1st Cir. BAP 2004).

failed to demonstrate that his condition was in any way exacerbated by the City's actions. The Debtor bore the burden of proving that the stay violations were the cause of either his medical condition or a worsening of that condition. *In re Steenstra*, 280 B.R. at 569. The Debtor failed to meet that burden.

The Debtor is also entitled to his actual damages suffered on account of the reasonable attorney's fees associated with the prosecution of his Stay Motion. *See e.g., In re Weisberg*, 218 B.R. 740, 750 (Bankr.E.D.Pa.1998); *In re Robinson*, 228 B.R. 75, 80 (Bankr.E.D.N.Y.1998). Those expenses must be sufficiently detailed by the Debtor's counsel. *In re Steenstra*, 280 B.R. at 570; *In re Price*, 143 B.R. 190, 197 (Bankr.N.D.Ill.1992). In the case at hand, the Debtor incurred attorney's fees in the amount of $6,846.00 and expenses in the amount of $1,030.37. The fees represent 43.1 hours of work (including services rendered at the evidentiary hearing) at an hourly rate of $160.00 per hour. Both the fees and expenses were sufficiently detailed and this Court finds them to be reasonable. Therefore, the Debtor will be awarded attorney's fees and expenses in the amount of $7,876.37.

B. Punitive Damages

An award of punitive damages is properly within the discretion of the Bankruptcy Court and is a fact specific determination. *See e.g., Clayton v. King (In re Clayton)*, 235 B.R. 801, 811 (Bankr. M.D.N.C.1998); *In re Timbs*, 178 B.R. 989, 997–98 (Bankr.E.D.Tenn.1994); *In re Klein*, 226 B.R. 542, 545 (Bankr.D.N.J. 1998). While the actual intention to violate the automatic stay has no impact on the determination of whether actions are "willful" for the purpose of determining actual damages, intentionality or reckless conduct is relevant when evaluating the propriety of punitive damages. *See In re Steenstra*, 280 B.R. at 569.

The City claims that it is entitled to special, more lenient, treatment with regard to the imposition of punitive damages by virtue of its status as a municipality. The City contends that, as a matter of policy, it would be inequitable to assess punitive damages against a municipality. This Court disagrees. A governmental unit's "[lack] of inclination or willingness to take any steps to prevent further violations of the automatic stay" constitutes willful and wanton disregard of the stay and may warrant an award of punitive damages. *Stucka v. U.S. (In re Stucka)*, 77 B.R. 777, 783–84 (Bankr. C.D.Cal.1987). *Any* creditor that receives notice of a violation and fails to take adequate steps to rectify the situation can no longer claim innocence. The City's failure to take appropriate steps to prevent the issuance of the Notice of Impending Foreclosure, after receiving notice of its inadvertent violations in issuing the Notice of Tax Taking and in recording the Tax Taking itself, was in reckless disregard of the automatic stay. It was clear from the testimony that the information imparted by the Stay Motion was received casually by the City Collector and the Treasurer. Notices of violation of federal injunctions ought to get more immediate attention.

This Court will not award the Debtor punitive damages for the City's actions in issuing the Notice of Tax Taking or recording the Tax Taking itself. Mailing the Notice of Impending Foreclosure, however, does warrant such an award. The City was notified of its earlier mistake and did not act appropriately to ensure that its error was not repeated. All of its efforts were in pursuit of the Debtor's tax obligations in the amount of $6,977.35. It seems fitting that $6,977.35 should be the amount that the City pays in punitive dam-

ages for its failure to respond in a responsible manner to the information it received.

### C. Mitigation of Damages

Finally, the City complains that Debtor's counsel's delay in notifying the City of its error in sending the Notice of Taking exacerbated the Debtor's damages. The City further argues that the Debtor's failure to directly notify the City prior to filing the Stay Motion was a violation of the Massachusetts Local Bankruptcy Rules. Rule 9013–1(b) provides:

> Before the filing of any motion, except a motion for an emergency hearing under MLBR 9013–1(h) or a routine motion unlikely to be opposed by any party in interest, the movant shall make a reasonable and good faith effort to determine whether or not the motion is unopposed.

MLBR 9013–1(b).

■ Debtors are indeed under a duty to mitigate their damages resulting from automatic stay violations. *In re Clayton,* 235 B.R. at 812. Here, Debtor's counsel waited six weeks before notifying the City of the first violation. And at no time prior to the filing of the Stay Motion did the Debtor or Debtor's counsel contact the City to discuss the alleged violation of the automatic stay. But the City is poorly positioned to make this argument on these facts. In light of the casual approach taken by the City to the information first received from the Debtor's counsel, the Court has no confidence that, had the Debtor's counsel acted sooner, the City would have sprung into action and prevented what subsequently occurred. In any event, punitive damages have been awarded only for the mailing of the Notice of Impending Foreclosure, well after the City received notice of its first violations of the automatic stay.

### III. *CONCLUSION*

For all the foregoing reasons, the Court finds and rules that the Debtor is entitled to damages on account of the City's violations of the automatic stay and orders the City to pay to the Debtor, within thirty (30) days, the sum of $18,853.72, consisting of: a) $4,000.00 in actual damages, b) $6,977.35 in punitive damages, and c) $7,876.37 for reimbursement of attorney's fees and expenses.