**In re Thomas Vincent OKSENTOWICZ, Debtor.**

**No. 03–46502R.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

May 3, 2005.

---

Jeffrey J. Randa, Mt. Clemens, MI, for Debtor.

*Opinion Regarding Debtor's Motion
Seeking Relief for Violations of
11 U.S.C. § 525(a)*

STEVEN RHODES, Chief Judge.

This matter is before the Court on a motion filed by the debtor, Thomas Vincent Oksentowicz, seeking relief for violations of the anti-discrimination provision of 11 U.S.C. § 525 by Clinton Place Apartments and Clinton Place Ltd. Dividend Housing Assoc. Clinton Place filed an objection. The Court conducted a hearing on April 18, 2005, and took the matter under advisement. For the reasons stated herein, the motion is denied.

I.

Oksentowicz filed his bankruptcy petition on March 7, 2003. His discharge was granted on June 12, 2003. On October 18, 2004, Oksentowicz submitted a rental application to Clinton Place Apartments. On November 1, 2004, Oksentowicz received a letter from Wingate Management Corp., the management company for Clinton Place Apartments, rejecting his rental application. The letter indicated that his rental application was denied because credit checks revealed that he had a bad credit history. The letter further stated that Oksentowicz may respond in writing, within 14 days, to request a meeting with management to discuss the rejection. (See Clinton Place's Brief, Ex. 1.)

On November 9, 2004, Oksentowicz sent a letter to Wingate requesting a meeting. (See Clinton Place's Brief, Ex. 2.) In the letter, Oksentowicz stated that he had filed bankruptcy and all of his past debts had been discharged.

On November 11, 2004, Wingate sent a letter to Oksentowicz scheduling a meeting for December 14, 2004, at 11:30 am. The letter stated that if Oksentowicz was unable to attend the meeting, he had 7 days to notify Wingate to reschedule the meeting. The letter further stated that failure to contact Wingate within 7 days or to attend the meeting would be considered a voluntary forfeiture of Oksentowicz's appeal. (See Clinton Place's Brief, Ex. 3.)

On November 22, 2004, Oksentowicz's attorney sent a letter to Wingate objecting to the rejection of Oksentowicz's rental application on the grounds that it was a violation of the anti-discrimination provision of § 525 and the case law thereunder. (See Clinton Place's Brief, Ex. 4.) The letter requested reconsideration of Oksentowicz's application and requested notification as to whether a personal appearance was still required on December 14, 2004. Wingate called Oksentowicz on December 6, 2004, and advised him that he still needed to personally appear at the meeting.

On December 10, 2004, Oksentowicz's attorney sent a letter to Wingate stating that he saw no reason for his client to travel for a meeting when it was clear that Wingate had no intention of reversing its denial of Oksentowicz's application based on his credit report. The letter indicated that Oksentowicz and his attorney would be willing to meet with Wingate if Wingate agreed to reverse the denial and agreed to hold the meeting in Macomb County. (See Clinton Place's Brief, Ex. 5.)

Oksentowicz did not appear at the December 14, 2004, meeting. Wingate sent a letter to Oksentowicz stating that because he failed to attend the meeting, the origi-

nal decision to reject his application would be upheld. (See Clinton Place's Brief, Ex. 6.)

## II.

Oksentowicz contends that because his bankruptcy was the basis of the denial of his rental application, Clinton Place violated § 525(a).

Clinton Place argues that it is not a "governmental unit" under § 525(a), that a rental unit in Section 8 housing is not a "license, permit, charter, franchise, or similar grant" under § 525(a), and that it did not deny Oksentowicz's rental application solely because of his bankruptcy. It also contends that by failing to appear, Oksentowicz waived his opportunity to appeal the rejection of his application. Clinton Place asserts that if Oksentowicz had appeared at the meeting with documentation showing that he had regularly paid rent for the past 12 months, or provided other evidence of financial responsibility, it is more likely than not that his application would have been granted.

Clinton Place also complains about the failure of Oksentowicz' attorney to inform it of this Court's previous decision in *In re Oksentowicz*, 314 B.R. 638 (Bankr. E.D.Mich.2004), in which the Court held that a Section 8 apartment complex is a "governmental unit" under § 525(a). Clinton Place contends that if Oksentowicz's attorney had made it aware of that decision, it likely would have reconsidered its denial of Oksentowicz's rental application.

## III.

The Court concludes that Oksentowicz's conduct in this matter precludes awarding damages. In cases involving automatic stay violations, in which debtors frequently file motions for contempt or for damages under 11 U.S.C. § 362(h), courts have overwhelming held that debtors have an obligation to attempt to mitigate damages prior to seeking court intervention. "Although the Bankruptcy Code does not require a debtor to warn his creditors of existing violations prior to moving for sanctions, the debtor is under a duty to exercise due diligence in protecting and pursuing his rights and in mitigating his damages with regard to such violations." *Clayton v. King (In re Clayton)*, 235 B.R. 801, 811 (Bankr.M.D.N.C.1998). *See also In re Risner*, 317 B.R. 830, 840 (Bankr.D.Idaho 2004) ("[I]n determining reasonable damages under § 362(h), the bankruptcy court must examine whether the debtor could have mitigated the damages[.]"); *In re Rosa*, 313 B.R. 1, 9 (Bankr. D.Mass.2004) ("Debtors are indeed under a duty to mitigate their damages resulting from automatic stay violations."); *Shadduck v. Rodolakis*, 221 B.R. 573, 585 (D.Mass.1998); *In re Craine*, 206 B.R. 594, 597–98 (Bankr.M.D.Fla.1997); *In re Brock Utilities & Grading, Inc.*, 185 B.R. 719, 720 (Bankr.E.D.N.C.1995); *McHenry v. Key Bank (In re McHenry)*, 179 B.R. 165 (9th Cir. BAP 1995); *In re Esposito*, 154 B.R. 1011, 1015 (Bankr.N.D.Ga.1993) (Debtor has a duty to mitigate damages.). "The automatic stay was not designed to be used as a kind of spring-loaded gun against creditors who wander into traps baited by the debtor." *Clayton*, 235 B.R. at 807.

In *Rosengren v. GMAC Mortgage Corp.*, 2001 WL 1149478 (D.Minn. Aug. 7, 2001), the court stated:

[T]he unnecessary escalation of a matter of somewhat limited consequence which could have been resolved by much less lawyering does not make economic or emotional sense. Such escalation creates damages, magnifies costs, and burdens the system. More significantly, such efforts reveal a lack of perspective.... [T]he policy of § 362(h) to discourage willful violations of the automatic stay has long been "tempered by a reasonableness standard born of courts'

reluctance to foster a 'cottage industry' built around satellite fee litigation."

*Id.* at *4–5 (citation omitted).

■ Likewise, with respect to alleged violations of § 525(a), the Court concludes that a debtor has a duty to mitigate damages. Any damages suffered by Oksentowicz here are minimal and likely relate more to the filing of this motion than to the alleged discrimination. If Oksentowicz's goal had been to obtain needed Section 8 housing, he would have fully cooperated with Wingate by informing Wingate of the Court's prior decision and appearing at the review meeting. Instead, it appears that Oksentowicz and his counsel were simply setting Wingate up for this litigation. In such circumstances, the Court must conclude that Oksentowicz's damages were caused as much, or more, by his own deliberate strategy as by any alleged violation of § 525(a).

Accordingly, Oksentowicz's motion seeking relief for violations of the anti-discrimination provision of § 525(a) is denied.