**In re Todd A. PANEK, Debtor.**

**No. 03–46692–HJB.**

United States Bankruptcy Court,
D. Massachusetts,
Western Division.

March 5, 2009.

L. Jed Berliner, Berliner Law Firm, Springfield, MA, Peter W. MacConnell, Monsein, Monsein,& MacConnell, Amherst, MA, for Debtor.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is a "Motion for Default Judgment on Motion for Stay Violation Sanctions Against Delta Management Associates, Inc." (the "Default Judgment Motion"), filed by Todd A. Panek (the "Debtor"). The Debtor seeks a monetary award against creditor Delta Management Associates, Inc. ("Delta Management") for his actual damages, attorney's fees, and punitive damages on account of three (3) alleged violations of the automatic stay under 11 U.S.C. § 362(a) and statutory damages for a federal Fair Debt Collection Practice violation pursuant to 15 U.S.C. § 1692k(a)(2)(a).

## I. FACTS AND TRAVEL OF THE CASE

The Debtor filed a Chapter 13 bankruptcy petition in this Court on November 20, 2003 (the "Petition Date"). Within his bankruptcy schedules, the Debtor listed Delta Management as an unsecured creditor with a claim in the amount of $6,192 arising from a 1991 student loan debt obligation. Delta Management was also listed in the Debtor's Creditor Matrix, filed with the Court on the Petition Date. The Bankruptcy Court Clerk's Office mailed a "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines" to all creditors, including Delta Management, on November 25, 2003. Additionally, on or about December 22, 2003, the Debtor served Delta Management with a copy of his Chapter 13 Plan.

Prior to the Petition Date, the Debtor had authorized Delta Management to make monthly electronic withdrawals in the amount of $67 directly from his bank account. According to the Debtor, these withdrawals continued even after commencement of the bankruptcy case. On March 1, 2004, the Debtor filed a motion for sanctions against Delta Management and United States of America (the "United States") for violations of the automatic stay (the "Sanctions Motion"). The Debtor contended that Delta Management, as collection agent for the United States Department of Education (the "Department of Education"), electronically withdrew, postpetition and despite notice of the pending bankruptcy case, three (3) monthly payments of $67, totaling $201.[1] The

---

1. The Debtor also sought sanctions against the United States for the offset of an $883 income tax refund applied to his outstanding student loans. However, the United States objected to the Sanctions Motion on the grounds that the Court lacked jurisdiction to grant any relief relating to the tax refund

offset pursuant to 26 U.S.C. § 6402(f) and that the Department of Education did not hold any loan of the Debtor—the loan at issue was claimed to be held by American Student Assistance for which Delta Management was the collection agent. The Department of Education also noted that American Student As-

Debtor also alleged that, on February 3, 2004, he spoke with a representative of Delta Management by telephone and discussed his bankruptcy case. The Debtor also represented that a request made to his bank to dishonor further Delta Management withdrawals was refused.

Delta Management failed to respond to the Sanctions Motion. A hearing on the Sanctions Motion was first held on May 12, 2004 and Delta Management failed to appear. Accordingly, Delta Management was defaulted for its failure to respond to the Sanctions Motion and/or appear at the hearing and the United States, which did appear, was instructed to file a motion for summary judgment further outlining its defense.[2] The United States timely filed a motion for summary judgment on July 16, 2004. On September 8, 2004, the Debtor and the United States filed an agreed motion to continue the upcoming September 13, 2004 hearing on the summary judgment motion and retroactively extend the deadline for the Debtor to oppose it. The Debtor's opposition and a subsequent response by the United States were filed by October 4, 2004. But, apparently now convinced by the United States' arguments, the Debtor filed a motion on April 13, 2005, seeking substitution of American Student Assistance ("ASA") for the United States as the proper co-respondent in the Sanctions Motion. That substitution was allowed by the Court on April 27, 2005 without objection.

No further action was reflected on the Court docket until April 26, 2008 when the

Debtor filed a motion requesting that ASA be dismissed as co-respondent and default judgment be entered against Delta Management. A hearing on the request was scheduled for and held on June 25, 2008. One day prior to the hearing, June 24, 2008, Delta Management awakened. Attorney Michael Riordan filed a motion on its behalf to appear telephonically and alternatively requested a continuance stating:

> As reasons therefore, the Defendant states that this matter was successfully settled between Delta Management Assoc, Inc. and the Petitioner on June 24, 2008 at approximately 4:00pm and same was reported to this Honorable Court. As such[,] Petitioner's Motion as to Delta Management is moot.
>
> **WHEREFORE,** the Defendant, Delta Management Assoc., Inc respectfully requests this Honorable Court allow Defendant's Counsel to appear telephonically or in the alternative to allow a Continuance for thirty (30) days for settlement documents to be executed and delivered.

Defendant's, Delta Management Associates, Inc., Motion to Appear for Hearing Telephonic, *In re Panek*, No. 03–46692 (Bankr.D.Mass. June 24, 2008).

Attorney Riordan's request to appear telephonically was allowed and, at the hearing on the Debtor's motion and with Attorney Riordan attending by telephone, Debtor's counsel, L. Jed Berliner, represented to the Court that the Debtor and

---

sistance refunded the $883 offset to the Debtor on March 11, 2004 upon receipt of notice of the Debtor's bankruptcy case. As such, the United States contended that any relief sought by the Debtor was more properly directed against American Student Assistance.

**2.** The Proceeding Order issued after the May 12, 2004 hearing read in whole:

DELTA MANAGEMENT ASSOCIATES, INC. IS DEFAULTED. THE UNITED STATES SHALL FILE A MOTION FOR SUMMARY JUDGMENT ON OR BEFORE JULY 16, 2004. THE DEBTOR SHALL FILE ANY RESPONSE ON OR BEFORE AUGUST 20, 2004. A HEARING ON THE MOTION IS SET FOR SEPTEMBER 13, 2004 AT 10:00AM IN SPRINGFIELD.

Delta Management had finally been in touch and reached an agreement, not yet documented, whereby Delta Management would pay the sum of $6,000—the amount requested in the Default Judgment Motion plus $540 for the "unliquidated punitive damage" portion.[3] The Court then granted the Debtor's request to dismiss ASA and further continued the request for default judgment against Delta Management to July 23, 2008, specifically instructing the parties: "obviously if you have already resolved your dispute, feel free to file something and request that the hearing be canceled."

However, nothing was filed prior to the July 23, 2008 continued hearing, and Debtor's counsel reported to the Court that he had heard and received "nothing further" from Delta Management regarding the proposed agreement suggested to the Court at the prior hearing. Delta Management also failed to appear at the continued hearing and its attorney filed no request to appear telephonically, to be excused from the hearing, or to request an additional continuance. Accordingly, Debtor's counsel requested that this Court award damages in the amount of $5,240–$221 for out-of-pocket damages, $500 for emotional distress, $1,000 for a Fair Debt Collection Practice violation, and $3,519 for attorney's fees [4]. In addition, Debtor's counsel requested punitive damages, this time left to the Court's discretion, given

the nature of the purported automatic stay violations and Delta Management's conduct throughout the life of the case. In light of that request, the Court took the matter under advisement.

## II. DISCUSSION

 The automatic stay, provided under § 362(a) of the Bankruptcy Code, is "one of the fundamental debtor protections provided by the bankruptcy laws." S.Rep. No. 95–989, p. 54 (1978); H.R.Rep. No. 95–595, p. 340 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5840, 5963, 6296. As explained by this Court in *In re Rosa,*

> The purpose of the automatic stay is two-fold. First, the stay protects the estate and gives a trustee the opportunity to marshal and distribute the assets. *See, e.g., Nelson v. Taglienti (In re Nelson),* 994 F.2d 42, 44 (1st Cir.1993). Second, it gives the debtor "breathing room," stopping all collections, foreclosures, and harassment. *See, e.g., In re Soares,* 107 F.3d 969, 975 (1st Cir.1997); *Shadduck v. Rodolakis,* 221 B.R. 573, 582 (D.Mass.1998).

313 B.R. 1, 6 (Bankr.D.Mass.2004). The automatic stay "enables debtors to resolve their debts in a more orderly fashion, and at the same time safeguards their creditors by preventing 'different creditors from bringing different proceedings in different courts, thereby setting in motion a

---

3. The Default Judgment Motion sought $221 for actual damages (the $201 directly withdrawn from the Debtor's bank account and a $20 stop payment fee), $500 for emotional distress, $1,000 as statutory damages for a Fair Debt Collection Practice violation, and $3,519 for attorney's fees. Thus, the total requested, absent punitive damages, was $5,240. This amount plus the $540 punitive damages cited at the June 25, 2008 hearing would total $5,780—not $6,000. However, at the continued hearing on July 23, 2008, Debtor's counsel cited the proposed settlement

punitive damages to have been $760, which would account for the difference. In light of the disposition of the instant motion set forth below, the difference is immaterial.

4. Attached to the Default Judgment Motion was a breakdown of the professional services provided by attorney Berliner in relation to this matter. Attorney Berliner requests compensation in the amount of $3,519 representing 13.80 hours of work at an hourly rate of $255.

free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets'" *In re Soares,* 107 F.3d at 975 (citations omitted). Thus, the automatic stay "is a critical component of the [Bankruptcy] Code's dual mandate to provide a fresh start to the honest debtor and to ensure a uniform distribution of nonexempt assets to creditors of the same class." *In re Steenstra,* 280 B.R. 560, 566 (Bankr. D.Mass.2002).

■ However, the protections afforded by the automatic stay are meaningless if they are not enforced. *In re Rosa,* 313 B.R. at 6 (*citing In re Soares,* 107 F.3d at 971). 11 U.S.C. § 362(h), recodified in 2005 as § 362(k) pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act (Pub.L. 109–8, 119 Stat. 23, enacted April 20, 2005), was enacted as a tool to enforce the automatic stay and provide individual debtors with a recourse from violations. It provides that:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h)(2004).

■ A debtor alleging a violation of the automatic stay has the burden to demonstrate, by a preponderance of the evidence, that a violation of the automatic stay has occurred, that the violation was willfully committed by the respondent, and that the debtor suffered damage as a result of the violation. *In re Steenstra,* 280 B.R. at 566 (*citing Adams v. Hartconn Assoc., Inc. (In re Adams),* 212 B.R. 703, 708 (Bankr.D.Mass.1997)); *In re Dunn,* 202 B.R. 530, 531 (Bankr.D.N.H.1996).[5] The Court need not delve into that analysis, however. Delta Management has already conceded in open court, through counsel, that it would compensate the Debtor for the damages and costs he incurred as a result of its conduct—actual and statutory damages and reimbursement of attorney's fees—together totaling $5,240. The remaining question for this Court is the issue of the Debtor's request for punitive damages.

---

**5.** As explained by this Circuit in *Fleet Mortgage Group, Inc. v. Kaneb:*

> A willful violation does not require a specific intent to violate the automatic stay. The standard for a willful violation of the automatic stay under § 362(h) is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation. *See Goichman v. Bloom (In re Bloom),* 875 F.2d 224, 227 (9th Cir.1989); *see also Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.),* 902 F.2d 1098, 1105 (2d Cir. 1990); *Cuffee v. Atlantic Bus. and Community Dev. Corp. (In re Atlantic Business and Community Corp.),* 901 F.2d 325, 329 (3d Cir.1990). In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate. *See Homer Nat'l Bank v. Namie,* 96 B.R. 652, 654 (W.D.La.1989). The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay. *See Mitchell Const. Co., Inc. v. Smith (In re Smith),* 180 B.R. 311, 319 (Bankr.N.D.Ga.1995).

196 F.3d 265, 269 (1st Cir.1999). "Absent such knowledge on the part of the creditor, however, the violation is merely 'technical,' and no damages are to be awarded." *McMullen v. Sevigny et al. (In re McMullen),* 386 F.3d 320, 330 (1st Cir.2004) (citations omitted). For purposes of § 362(h), actual damages should only be awarded if there is concrete evidence supporting the award in a definite amount and must show the amount with reasonable certainty. *In re Heghmann,* 316 B.R. 395, 405 (1st Cir. BAP 2004)(*citing In re Sumpter,* 171 B.R. 835, 844 (Bankr. N.D.Ill.1994)). Actual damages includes claims for emotional distress and attorney's fees. *See Kaneb,* 196 F.3d at 269 (citations omitted); *In re Rosa,* 313 B.R. at 8 (citations omitted).

Punitive damages are available, under "appropriate circumstances," to compensate an individual for violations of the automatic stay. 11 U.S.C. § 362(h)(2004). "Appropriate circumstances in which to award punitive damages is a discretionary matter that has been entrusted to the bankruptcy courts." *In re Curtis*, 322 B.R. 470, 486 (Bankr.D.Mass.2005)(*citing Clayton v. King (In re Clayton)*, 235 B.R. 801, 811 (Bankr.M.D.N.C.1998)); *In re Hendry*, 214 B.R. 473 (Bankr.E.D.Va.1997). Similarly, the amount in which punitive damages should be awarded is a fact-specific determination subject to bankruptcy court discretion. *In re Rosa*, 313 B.R. at 8. This Court addressed the issue in *In re Curtis*, stating:

> Punitive damages should be awarded in an amount sufficient to serve their purpose of deterrence. *See In re Klein*, 226 B.R. 542 (Bankr.D.N.J.1998); *In re Georgeff*, 226 B.R. 852 (Bankr.S.D.Ohio 1998); *In re Wills*, 226 B.R. 369 (Bankr. E.D.Va.1998). What would be sufficient to deter one creditor may not even be sufficient to gain notice from another. Punitive damages must be tailored not only based upon the egregiousness of the violation, but also based upon the particular creditor in violation.

322 B.R. at 487. "[W]here there has been an 'arrogant defiance' of the Bankruptcy Code, punitive damages are most appropriate." *Id.* at 486 (*citing In re Medlin*, 201 B.R. 188 (Bankr.E.D.Tenn.1996)). "The primary purpose of punitive damages awarded for a willful violation of the automatic stay is to cause a change in the creditor's behavior; . . . . [and] . . . the prospect of such change is relevant to the amount of punitive damages to be awarded." *In re Shade*, 261 B.R. 213, 216 (Bankr.C.D.Ill.2001) (citations omitted). Other factors to be considered by the court when contemplating punitive damages include: "the nature of the creditor's conduct, the nature and extent of harm to the debtor, the creditor's ability to pay damages, the level of sophistication of the creditor, the creditor's motives, and any provocation by the debtor." *Varela v. Ocasio (In re Ocasio)*, 272 B.R. 815, 825 (1st Cir. BAP 2002) (*quoting In re Shade*, 261 B.R. at 216 (citations omitted)).

Debtor's counsel reiterated the proposed terms of a settlement between the Debtor and Delta Management at the June 25, 2008 hearing. Those terms included an award of $760 allocated to punitive damages. But in light of Delta Management's failure to collaborate with Debtor's counsel to prepare a final memorialization of the terms of the proposed settlement and failure to appear at the continued hearing on the Default Judgment Motion, this Court agrees with the Debtor that the purportedly agreed-upon punitive sanction is no longer in an amount which serves its intended purpose. Delta Management failed to respond to the original Sanctions Motion. It failed to appear at the hearing on the Sanctions Motion on May 12, 2004. It filed no response to the Default Judgment Motion other than the request to have its attorney appear telephonically. That attorney represented to the Court on June 25, 2008 that a settlement had been reached. But Delta Management failed to memorialize the purported settlement, nor did it appear at the July 23, 2008 continued hearing. When the temerity of those actions and omissions—now not only a violation of the Debtor's rights, but a rank affront to this Court's processes—are added to the stay violations themselves, it is clear that Delta Management has failed to appreciate the gravity of its transgressions. An increase in the amount of punitive damages, therefore, appears to be best suited to send a message which will be heard. Accordingly, this Court will award

to the Debtor, in addition to actual and statutory damages of $5,240.00 (inclusive of attorney's fees), punitive damages the amount of $10,000.00, plus the additional amount of $1,000.00 per day for each day on which all payments awarded hereunder have not been paid to Debtor's counsel on the Debtor's behalf, commencing 31 days after the award becomes final.

## III. *CONCLUSION*

When someone does not seem to be listening, occasionally the best strategy is to speak louder. For that reason and the others set forth herein, the Court GRANTS the Debtor's "Motion for Default Judgment on Motion for Stay Violation Sanctions Against Delta Management Associates, Inc.," as amended in open court, and awards the Debtor the sum total of $15,240.00–$721.00 in actual, including emotional distress, damages, $1,000.00 in statutory damages for a Fair Credit Collection Practice violation, $3,519.00 for attorney's fees, and punitive damages in the amount of $10,000.00—plus the additional amount of $1,000.00 per day for each day on which all payments awarded hereunder have not been paid to the Debtor's counsel on the Debtor's behalf, commencing 31 days after this award becomes final.

A separate Order in conformity with this Memorandum of Decision shall enter herewith.